## E. DUVALL, EXECUTRIX OF GRAFTON B. DUVALL *vs.* THE FARMERS' BANK OF MARYLAND.—*June*, 1837.

G, on the 17th of July, 1827, entered into the following agreement with the plaintiffs. "Whereas, I am endorser of three notes drawn by L, payable to R, and endorsed by R and myself, the first bearing date the 9th of May, 1827, payable at sixty days after date; the second bearing date the 1st of June, 1827, payable at ninety days after date; and the third, bearing date the 20th of June, 1827, payable sixty days after date. And whereas, at my request, the bank which holds the said notes have agreed not to protest the same, or to ask a renewal of them when they become due, I do hereby agree to dispense with all notice of the time of payment, or of the non-payment of said notes, and to be answerable for the amount of said notes, although no such notice is given to me." The bank, on the 17th of September, 1829, instituted a suit against G, to recover the amount of the two notes, dated the 9th of May, and the 20th of June, 1827, when it was *held,* 1st. That with reference to the note *not due* at the date of the agreement, both demand on the maker, and notice to the defendant, the endorser, were dispensed with. 2d. That with regard to the note which *was due,* notice was dispensed with, and that as to the latter, the agreement furnished inferential evidence for the jury of a demand, subject, however, to be rebutted by opposing evidence on the other side.

Although the agreement of the 17th of July, was made under the impression, that the bank, but for it, was under the usual obligation to make demand, and give notice on both notes; yet it does not preclude the plaintiff from showing, by the acts and agreements of the parties anterior thereto, that he was under no obligation to do so, nor is that right denied him, from the circumstance of his having offered evidence that a demand was in fact made.

The holder of a promissory note is not bound to demand payment of the maker, when the latter has transferred to his endorser all his property, to indemnify him against loss for his liability, and the endorser, in such circumstances, is responsible to the holder, though the demand is omitted. But whenever an exemption from the necessity of proving a demand is claimed, the plaintiff must prove the facts necessary to make his case an exception to the general rule.

Where the maker of promissory notes gave to his endorsers a mortgage for their indemnity, with a covenant to pay the responsibilities, at a period subsequent to the maturity of the notes; the effect of such covenant is, not only to prevent a foreclosure of the mortgage before the time stipulated, but all recovery against the maker, on account of the notes prior to that period, though the endorsers are compelled to pay the money earlier. And such covenant has the further effect, to render unnecessary to the responsibility of the endorsers, that the holder should demand payment of the maker, and give notice of dishonour to them.

If in such case, there is more than one endorser, and the mortgage is given to them all, demand and notice are not necessary to enable the succeeding to recover from the preceding endorsers, for the former could have no

recourse to the latter until the time limited in the mortgage for the drawer's responsibility had elapsed.

Evidence to establish a particular usage of a bank rejected, when the officer by whom the usage was offered to be proved, spoke of but a single case of the kind referred to.

Upon a second appeal in the same case, this court may look into, and decide questions involved in the record previously brought up, when a decision of those questions was not made upon the former appeal.

APPEAL from *Anne Arundel* county court.

This was an action of *assumpsit*, brought on the 17th of September, 1829, by appellees against *Grafton B. Duvall.* The plaintiffs declared on a note of *Lewis Duvall*, dated 20th June, 1827, payable sixty days after date, to *Richard Duvall*, or order, for $750, endorsed by him to *Grafton B. Duvall*, and by him to the appellees, in the usual form.

2. On another note, made and endorsed as aforesaid, for $7,857, and in the usual form.

3. On the indebtedness of the said *Grafton* to the appellees, arising on the agreement referred to in the evidence, claiming under a special count upon that contract. The defendant pleaded *non assumpsit*, on which issue was joined.

1st EXCEPTION.—At the trial of this cause the plaintiffs proved the promissory note of *Lewis Duvall*, bearing date, *Annapolis*, 20th of June, 1827, payable sixty days after, to *Richard Duvall*, or order for the sum of $750, endorsed by the payer and *Grafton B. Duvall*, (the defendant) to the plaintiff; and a like note for $7,857, dated 9th May, 1827, endorsed as the previous one; and then proved the following agreement of the defendant:

"Whereas, I am endorser of three notes, drawn by *Lewis Duvall*, payable to *Richard Duvall*, and endorsed by *Richard Duvall* and myself, the first bearing date the 9th day of May, 1827, for $7,857, payable sixty days after date; the second for $300, bearing date 1st June, 1827, payable ninety days after date; and the third for $750, bearing date 20th June, 1827, payable sixty days after date. And whereas at my request the *President, Directors and Company of the Farmers' Bank of Maryland*, who hold the said notes, have agreed not

to protest the same, or to ask a renewal of them when they become due ; I do hereby agree to dispense with all notice of the time for payment, or of the non-payment of said notes, and to be answerable for the amount of said notes, although no such notice is given to me. Witness my hand this 17th July, 1827."

The defendant then proved by *Richard M. Chase*, that he the witness, at the time the said note for $7,857, became payable, and for some years before that time, and ever since, was a clerk in the banking house of the plaintiffs, and also a notary public, residing at *Annapolis ;* and that during all that time he has been in the habit of transacting all the notarial business of the bank, and the said witness after referring to his record as notary public, further proved, that he had *no* knowledge whatever, of any demand having been made on the drawer of the aforesaid note for payment thereof at the time the same became payable, and that he believed no such demand had been made by him, and that according to the general and constant usage of the bank, the demand of said note, if it had been intended to be protested, unless paid or otherwise provided for, would have been made by said witness.

Whereupon the plaintiffs prayed the court to instruct the jury, that if they should be of opinion from the testimony before them, that the two several notes aforesaid, were signed by *Lewis Duvall,* and endorsed by the payee, to the defendant, and by him to the plaintiffs, and also that the agreement aforesaid was signed by the defendant, then with respect to the first note for $7,857, the said agreement is evidence, that there had been a demand of payment, and it dispensed with notice of non-payment, and that the plaintiffs are entitled to recover, as if there had been other evidence of demand in due time of said first note ; and with respect to the note of $750, that the said agreement dispenses with a demand of payment of the said note, and also dispenses with notice of the non-payment, and entitles the plaintiffs to recover the

amount of the last note, without offering other proof than that adduced.

Which instruction the court gave with the further instruction, that the said agreement was evidence that payment of the said note for $7,857, was demanded at its maturity, but like other evidence is liable to be rebutted by other proof; that whether such demand was made is a matter of fact to be found by the jury, upon consideration of all the circumstances and proofs in the cause. The plaintiffs excepted to the further instruction.

2d EXCEPTION.—In addition to the proof contained in the first bill of exceptions, the plaintiffs offered proof that the notes on which this suit is brought, were renewals of former accommodations granted to *Lewis Duvall,* and which were from time to time to be renewed, and in addition thereto offered in evidence the two following deeds, from *Lewis* to *Richard* and *Grafton B. Duvall.*

1. A deed dated 9th February, 1825, in consideration of the sum of $6,720, due the grantees in consequence of their endorsing sundry notes for him, the said *Lewis,* negotiable at the *Farmers' Bank of Maryland,* and in order to secure the payment of that sum of money, or any additional sum that may arise due them, the said *Richard* and *Grafton B.* as security for him, the said *Lewis,* as endorsers, and in consideration of the sum of $10, conveying to them all that tract of land called *Greenfield,* except seventy acres as specified, and all the personal estate of him, the said *Lewis,* to be held by way of mortgage for their indemnity, with a covenant to pay the amount for which the grantees may become indebted, on or before the 1st September, 1829.

2. A deed of the 5th July, 1827, reciting an indebtedness of $10,000, and conveying the seventy acres excepted in the deed of 1825, to the same grantees, by way of mortgage for their security.

And thereupon the plaintiffs by their counsel prayed the court to instruct the jury, that if they find the notes on which this action was brought, were renewals of an old accommo-

dation, granted to *Lewis Duvall,* on his notes endorsed by *Richard Duvall* and the defendant, and that at the time the said notes came to maturity, the defendant knew that said notes so sued on, were not to be paid at maturity by *Lewis Duvall,* and that they were to be renewed, but for said agreement, then the plaintiffs are under no obligation to give any other evidence than has been offered, that any actual demand had been made on the said *Lewis Duvall,* for the payment of said notes, but that the jury are at liberty to infer, that the defendant agreed to hold himself liable for said notes, and that the plaintiffs are entitled to recover, as if the plaintiffs had given evidence of an actual demand for payment of said notes, on the days they fell due of the maker.

The defendant by his counsel in resisting said prayer objected, that the said two deeds from *Lewis Duvall* to said *Richard Duvall* and the defendant, and the assignment by *Lewis Duvall* to *Jonathan Pinkney,* (this assignment does not appear in the exception,) before stated were wholly inadmissible as testimony in this cause, and that if they were admissible, did not furnish evidence from which the jury could make the presumptions required by the plaintiffs' said prayer, and did not warrant the court in giving the instruction prayed for, and further insisted that if from the evidence in the cause, the jury should find that no actual demand was made on the said drawer for payment of said note for $7,857, when the same became payable, that the plaintiffs will not be entitled to recover, on the evidence aforesaid on said note for $7,857, and prayed the court so to instruct the jury, which instruction the court refused to give as prayed for by the defendant, but gave the instruction as prayed for by the plaintiffs. The defendant excepted, as well to the refusal as the instruction given.

3d EXCEPTION.—In addition to the preceding evidence, the plaintiffs offered in evidence a deed from *Lewis Duvall* to them, dated the 28th July, 1815, conveying by way of mortgage, a tract of land whereon the grantor resided, called *Acton,* and all the adjoining land which the said *Lewis*

*Duvall* then held, and all the personal estate of him, the said *Lewis Duvall,* which he is now in possession of. And the plaintiffs also offered proof that no payments were made by the defendant or said *Richard Duvall* to the plaintiffs, on account of the said notes so endorsed by them, for said *Lewis Duvall.* Thereupon the plaintiffs prayed the court to instruct the jury.

1st. That if they find from the evidence that the defendant and *Richard Duvall,* the prior endorser on the notes sued for, on the 9th day of February, 1825, obtained a mortgage from *Lewis Duvall* the maker of said notes to indemnify them on account of their endorsements on the original accommodation granted him on. the endorsements aforesaid, and that the notes sued upon are a continuation of such accommodations, and that said mortgage was in full force, when said notes fell due, that then the plaintiffs are not bound to give other evidence, than they have offered of a demand on the maker for the payment of said notes when they fell due.

2d. That if the jury find the facts aforesaid whereof the plaintiffs had offered testimony, and also find that said mortgage, and the deed of the 5th July, 1827, and the mortgage to the plaintiffs by said *Lewis Duvall* of the 28th July, 1815, convey all his, said *Duvall's* property, that then the plaintiffs are not bound to give other evidence, than they have given, of a demand on said maker for the payment of said note.

But the defendant again objected to the admissibility of the aforesaid deed of the 5th July, 1827, and insisted that the same was not evidence as offered. And further prayed the court to instruct the jury, if they believed the evidence so offered by the plaintiffs and defendant, if they find that no demand was made on the drawer for payment of said note for $7,857, when the same became payable, that then the plaintiffs will not be entitled to recover on said note.

The court refused to grant the first instruction asked for by the plaintiffs, *but granted the second,* and overruled the defendant's objection to the admissibility in evidence of the

deed of July, 1827, and refused to grant his instruction to the jury as prayed. The defendant excepted.

4th EXCEPTION.—The defendant further offered to prove in connection with all the preceding evidence, by *Samuel Maynard*, the cashier of the plaintiffs, that he has been cashier since the month of January, 1828, that from the organization of the bank to his appointment as cashier, he was teller of said bank, and that by the general usage of the bank, all notes discounted at said bank, which are not paid when they arrive at maturity or are otherwise specially provided for, or otherwise directed, are duly presented by the notary public to the drawer, and payment thereof demanded, and if the note is dishonoured, notice thereof is given to the endorsers thereof, for the purpose of showing that if the jury found such usage, the plaintiffs would not be entitled to recover on the note for $7,857, unless they should prove that, at the time the same became payable, a demand was made on the drawer for payment thereof in conformity with such usage. But the court, on the objection of the plaintiffs, refused to permit the evidence to go to the jury for the purpose aforesaid. The defendant excepted.

5th EXCEPTION.—In addition to all the preceding proof, the plaintiffs again read in evidence the deed of *Lewis Duvall* of the 28th of July, 1815, to them, and the deeds of the 9th of February, 1825, and 5th of July, 1827, and also offered proof that no payments were made by the defendant, or said *Richard Duvall*, to the plaintiffs, on account of said notes so endorsed by them for said *Lewis Duvall*, and thereupon the plaintiffs prayed the court to instruct the jury:

1st. That if the jury find from the evidence, that the defendant and *Richard Duvall*, the senior endorser on the notes sued for, on the 9th day of February, 1825, obtained a mortgage from *Lewis Duvall*, the maker of the said notes, to indemnify them on account of their endorsements on the original accommodation granted him on their endorsement as aforesaid, and that the notes sued upon are a continuation of such accommodation, and that said mortgage was in full force

when said notes fell due, that then the plaintiffs are not bound to give other evidence than they have offered of a demand on the maker, for the payment of said notes when they fell due.

2d. That if the jury find the facts aforesaid, whereof the plaintiffs had offered testimony, and also find, that said mortgage, and the deed of 5th of July, 1827, and mortgage of 28th of July, 1815, convey all his, the said *Duvall's* property, that then the plaintiffs are not bound to give other evidence than they have given of a demand on said maker, for the payment of said notes. The court refused to grant the first, and granted the second instruction. The defendant excepted to the second instruction.

The verdict and judgment being for the appellees, the appellant appealed to this court, where his death was suggested, and his executrix made a party appellant.

The cause was argued before STEPHEN, ARCHER, and CHAMBERS, Judges.

T. S. ALEXANDER, for the appellant, contended :

1. That the county court was right in the opinion expressed in the first bill of exceptions ; that the agreement of the 17th July, 1827, was merely evidence that payment of the note for $7,857 was demanded at maturity, and like all other evidence, was liable to be rebutted by contrary proof—and that whether such demand was made, was matter of fact to be found by the jury upon consideration of all the circumstances. The conclusion is that upon the evidence disclosed by this first bill of exceptions, if the jury had found that payment of the note in question had not been demanded at its maturity—their verdict must have been rendered for the defendant.

2. The facts attempted to be proved by the plaintiffs and disclosed in the second bill of exceptions, did not relieve the plaintiffs from their obligation to make a demand of payment of the foregoing note : nor did they relieve the plaintiffs from their obligation to prove to the satisfaction of the jury, that a demand of payment had in fact been made. The agree-

ment before mentioned is evidence, that under all the circumstances the plaintiffs were bound to make a demand on the drawer for payment of the note, and the defendant agreed to release the plaintiffs from the consequences of their failure to give notice of non-payment, only in the confidence that they had made a regular demand in fulfilment of their obligation. Availing themselves of this agreement which was made with full notice of all the facts, it is too late for the plaintiffs to pretend that new obligations in law were different from what they are solemnly admitted to have been by the agreement. *Powell on Cont.* 222. 1 *Powell*, 132. *Winchell vs. Latham*, 6 *Cowen*, 689.

3. That independent of the agreement, the mere facts, that the defendant, as endorser, had taken a security from the drawer, and that the note in question was a renewal of an old accommodation, and would have been renewed but for an agreement made long after it had arrived at maturity, would not relieve the plaintiffs from the obligation to make a demand on the drawer which existed when the note attained its maturity. *Chitty on Bills*, 209. *Bond et al vs. Farnham*, 5 *Mass.* 170. *Prentiss vs. Danielson*, 5 *Conn.* 175. *Barton vs. Baker*, 1 *Serg. and Rawl.* 1 *Esp. cases*, 302. *Brown vs. Maffey*, 15 *East.* 222.

4. The facts stated in this bill of exceptions were before the court of Appeals on the former appeal, and were necessarily considered as insufficient to sustain a verdict in favour of the plaintiff.

5. The plaintiffs' prayer and the instruction of the court assume, that the papers declared on and offered in evidence were notes really drawn by *Lewis Duvall*, and endorsed, as is attempted to be proved by the plaintiffs, and upon that hypothesis the court instructs the jury in reference to the rights of the plaintiffs in case other facts attempted to be proved should be found. Whereas, the drawing and endorsing of said alleged notes and matters of facts, are within the exclusive province of the jury.

6. That no evidence had been offered to the jury to show

that, at the time the pretended notes declared on came to maturity, the defendant knew that said notes were not to be paid at maturity by the drawer, and that they were to be renewed, but for the agreement which was offered in evidence, and in fact it was impossible that the agreement made long after the first note had attained its maturity could have prevented its regular renewal. *Free and another vs. Hawkins,* 8 *Taunt.* 92, in 4 *Serg. and Low.* 32.

7. The instruction to the jury, that they were at liberty to infer that the defendant agreed to hold himself liable for said notes under the circumstances stated, submitted to them to find the true construction of the written agreement which has been offered in evidence—there being no proof whatever of any other agreement than the agreement in writing. *Boteler and Belt vs. The State,* 5 *Gill and John.* 519. *Stockett vs. Watkin's adm'r,* 2 *Gill and John.* 341.

8. That the deeds from *Lewis Duvall* to *Richard* and *Grafton Duvall,* were wholly inadmissible in evidence, because it does not appear that the plaintiffs or the defendant had notice of them at the time of the dishonour of the first note, or at the date of the agreement between the parties to this action, and because they relate to different transactions.

9. That if these deeds were admissible for the purpose for which they were offered, the court ought distinctly and openly to have instructed the jury that the plaintiffs were under no obligations to make a demand on the drawer for payment of those notes, and therefore were not bound to offer proof of a demand. The defendant was aggrieved by the court's instruction that the plaintiffs were under no obligation to give *any other evidence than had been offered that an actual demand* had been made. Because it was necessarily calculated to mislead the jury into the belief that, sufficient evidence of an actual demand had been offered. Whereas, the proofs showed that no demand had in fact been made; and if it was doubted whether a demand of payment had been made, that question was to be determined by the jury on all the evidence.

10. The *second, fourth, eighth,* and *ninth* points, are equally applicable to the court's instruction contained in the third exception, and in addition thereto this instruction will be objected to for that

11. There was no evidence from which the jury could find that the deeds offered in evidence covered all the property of *Lewis Duvall.*

12. That if these deeds did cover all the property of said *Lewis Duvall,* they would not relieve the plaintiffs from their obligations to make a demand.

13. That the court erred in refusing to permit the defendant to prove the usage of the bank as stated in the fourth bill of exceptions.

The whole case turns on the question of an actual demand. It was the usage of this bank to make a demand of all notes. It extended to cases in which the bank was secured. The custom of this bank shows its obligation to make a demand: that bound both the bank and its customers. It might form a special custom to its own prejudice, in derogation of the common law, and for the sole benefit of its customers. 1 *Har. and John.* 180. *Renner vs. Bank of Columbia,* 9 *Wheat,* 581. *Thornton vs. Bank of Washington,* 3 *Peters,* 36.

The plaintiffs having alleged a demand must prove it. He cannot in such a state of pleading prove an excuse for want of a demand. The proof offered is an excuse arising from special circumstances for the demand. Proof from which a jury may infer a demand—or what amounts to a demand may be proved. *Chitty on Bills,* 362. *City Bank vs. Cutter et al,* 3 *Pick.* 414. *Blakely vs. Grantt,* 6 *Mass.* 388. *Cory et al vs. Scott,* 3 *Barn. and Ald.* 619.

Can the party recover in this case on the count for money lent. It is true the defendant was second endorser, next holder, but the proof shows that the discount was for the accommodation of the drawer. The defendant being a mere security is not liable on the money counts. *Chitty on Bills,* 364, 366. *Wells vs. Girling,* 8 *Taunt.* 737. *Page's adm'rs*

*vs. Bank of Washington*, 7 *Wheat*. 38.   *Wells vs. Girling*, 4 *Serg. and Low*. 264.

If the remedy is gone against the drawer by laches, then the plaintiffs cannot resort to the money counts against the endorser.

McMAHON, for the appellant.

As to what is a waiver by an endorser, and what by drawer, and their different consequences, he cited *Borradaile vs. Low*, 4 *Taunt*. 93, 94, 95.

As to the effect of a promise to pay, and to show this is a *nude pact* by reason of a prior discharge of the promisor; and the competency to repel an express promise, as being made on a mistaken notion of liability.   1 *Har. and John*. 187. *Turnpike Co. vs. McKean*, 10 *John*. 162.   *Jones and Maim vs. Savage*, 6 *Wend*. 660.

As to what questions have in fact come up on the record, and that the court must look at the evidence with reference to the instruction granted below, though it should state the whole evidence in the cause, he cited *Whiteside vs. Jackson*, 1 *Wend*. 421.   *Dean vs. Gridley*, 10 *Wend*. 257.

The record is no estoppel that facts impliedly admitted are not true.   The truth of the implication may yet be inquired into.   *Arch'd*, 222, 223.   And he submitted the following additional points:

That the evidence offered in the second exception to prove the knowledge of the defendant that the notes offered in evidence were renewals of an old accommodation granted to *Lewis Duvall* on his notes, endorsed by *Richard Duvall* and the defendant, and that at the time the said notes came to maturity, the defendant knew that said notes so sued were not to be paid at maturity by *Lewis Duvall*, and that they were to be renewed but for said agreement, was inadmissible under the declaration in this case to prove any agreement of the defendant to hold himself liable for said notes without demand, or that the plaintiffs were entitled to recover as if they had given evidence of a demand.   That the evi-

dence offered in the third and fifth exceptions in this case was inadmissible under the declaration in this case to prove the facts and circumstances hypothetically stated in the plaintiffs' prayers contained in both of said exceptions, as an excuse for non-demand (or for not giving any other evidence of demand) than they, the plaintiffs had already offered.

RANDALL, for the appellee.

Upon the construction of the agreement cited: *The Union Bank vs. Hyde*, 6 *Wheat.* 572.

On the third and fifth exceptions, and that *Duvall* had conveyed away all his property, which excused giving notice to the defendants; under the circumstances he cited: *Birely and Holtz vs. Staley*, 5 *Gill and John.* 433. *Bond, et al vs. Farnham*, 5 *Mass.* 170. 3 *Kent Com.* 113. *Clopper's adm'r vs. Union Bank*, 7 *Har. and John.* 102. 1 *John. Cas.* 99. *Duryee vs. Dennison*, 5 *John.* 248. *Beck vs. Thompson and Maris*, 4 *Har. and John.* 531.

On the mode of establishing a usage and its duration, he cited: 2 *Starke*, 451. 1 *Conn. Rep.* 43. *Bank of Columbia vs. Magruder*, 6 *Har. and John.* 172.

Under allegation of demand and notice, a waiver may be given in evidence, and in such cases the pleadings must take the ordinary form. *Norton vs. Lewis*, 2 *Conn. Rep.* 478. *Williams vs. Matthews*, 3 *Cow.* 222. *Taunton Bank vs. Richardson et al*, 5 *Pick.* 436. *Barker vs. Parker*, 6 *Ib.* 80.

A. C. MAGRUDER, for the appellee, cited:

*Beck vs. Thompson and Maris*, 4 *Har. and John.* 531. *Chitty on Cont.* 6.

McMAHON, in reply.

After an examination of the former decision in this cause, reported in 7 *Gill and John.* 46, and the state of the prayers offered, and opinion pronounced in this trial upon the questions of demand, and notice, and waiver of notice, he further cited: *Hopkins vs. Liswell*, 12 *Mass.* 52. *Philips, et al vs. McCurdy*, 1 *Har. and John.* 187, *Beck vs. Thompson and Maris*,

4 *Ib*. 531. That the defendant here was not estopped from an inquiry into the fact, whether a demand had been made. 3 *Bibb*. 104. *Chitty on Bills*, 238. *Arch*. 222, 223. An agreement to renew a note will not dispense with notice if not renewed. *Chitty on Bills*, 209. 3 *Camp*. 107. *Barton vs. Baker*, 1 *Serg. and Rawl*. 336, 337. An endorser may not demand notice of non-payment, when he is fully indemnified, or when he has agreed to pay as maker. 1 *Esp*. 300. Upon the state of the proof, and the questions open for discussion or exception to admissibility of evidence, he cited : *Sothoron vs. Weems*, 3 *Gill and John*. 435—441. Upon the state of the pleadings, and right to prove a waiver under the allegation of demand, refusal, and notice, he cited : *Chitty on Bills*, 362. *Bond, et al vs. Farnham*, 5 *Mass*. 170. *Blakely vs. Grantt*, 6 *Mass*. 388. There are some conflicts in the authorities, but the general rule of law is sustained, that an excuse intended to be relied on is usually pleaded, and the proof confined to the excuse.

The money counts are not sustained here, because the facts destroy all privity of contract between the bank and the defendant. *Free and another vs. Hawkins*, 8 *Taunton*, 92. *Beck vs. Thompson and Maris*, 4 *Har. and John*. 535.

On the law of the usages of specific and particular banks, which usages need not extend over a whole state or territory, he cited : *City Bank vs. Cutter et al*, 3 *Pick*. 418. *Loring et al vs. Gurney*, 5 *Ib*. 15. *Thornton vs. Bank of Washington*, 3 *Peters*, 36. *Bank of Columbia vs. Magruder*, 6 *Har. and John*. 180.

Upon proof of usage of a particular bank, the law presumes knowledge thereof in persons trading therewith, and their assent to such usage. Such usage controls the general law, and forms a part of the contract as much as if incorporated therein. In this case the usage is not denied, but is left on the proof of the defendant.

ARCHER, Judge, delivered the opinion of the court.

When this case was last before this court, on appeal, the court gave a construction to the agreement of 17th of July,

1827, and determined, that certain inferences of fact were deducible from the agreement.

The construction placed upon the agreement was, that on the note *not* due, both demand and notice were dispensed with; and, that on the other note, which *was* due, when the contract was entered into, notice was dispensed with; and it was further decided, that the inference, as an inference of fact, to be drawn from the acts of the parties in this agreement was, that there had been a demand, and of course that the agreement was evidence of a demand. But it was not meant to be intimated, that this inference of a fact was to be conclusive; on the contrary, the court below have rightly interpreted the opinion of this court, in deciding that such inference may be rebutted.

The cause having been remanded to the court below, and rebutting evidence having been offered, the plaintiff deemed it necessary to take the opinion of the court, whether under the evidence in the cause any demand was necessary to be made, or notice given.

This we think it was entirely competent for the plaintiff to do. We do not perceive any thing in the agreement of the 17th of July which prevents it. That agreement was, however, certainly made under the impression, by the parties, that the bank, but for the agreement, was under the usual obligation to make demand, and give notice on both notes. The agreement, however, notwithstanding its construction, and the inferences which may be drawn from it, cannot prevent the plaintiff from showing, if he can show, that the acts and agreements of the parties anterior to the agreement of the 17th of July, have dispensed with demand and notice, and rendered them unnecessary; nor do we perceive, that because the plaintiff had offered evidence of a demand, that he could be precluded from showing, that no demand was necessary to have been made; and accordingly the plaintiff has relied on several matters, each of which, it is alleged, is sufficient to enable the plaintiff to recover in the same manner as if a demand had, in fact, been made.

1. That the defendant knew that the notes were not to be paid at maturity, and that they were, but for the agreement, to be renewed.

2. That all the endorser's property had been conveyed as an indemnity, and to secure the payment of the endorser's liability.

3. That by the deed of mortgage of 1825, the defendant has placed it out of his power to sue the drawer in case of his default, till 1829.

As to the *first* proposition, without an inquiry into the legal effect of a knowledge on the part of the defendant, that the notes would not be paid, it may be sufficient to observe, that we can perceive no evidence in the cause from which it can be inferred, that when the first note arrived at maturity it was known to the defendant, that it was not to be paid. The agreement, it is true, stipulates that it was to lay over; but that was not entered into for several days after the note had arrived to maturity. There is evidence that the notes were renewals of former accommodations, and that they were to be renewed from time to time. But with whom was this understanding that the notes were to be renewed? There is no evidence to shew, that the defendant was, in any manner, a party to such agreement. The accommodation was for the benefit of the drawer, and although he might have entered into an agreement with the bank, that his note should be renewed, it could not affect the endorser, unless he was in some way privy to, or participated in the agreement for such renewal. Giving the greatest legal efficacy to such an agreement, as between the immediate parties to it, the endorsers, strangers to it, at the maturity of one of the notes, must still be considered, so far as this question is concerned, as standing upon their conditional liability as endorsers, and entitled to have a demand made on the drawer, and to have notice given to them. The deeds offered in evidence do not appear to throw any light on this branch of the case. The covenant by the drawer, in his deed of mortgage, to pay his liabilities to the bank in 1829, viewed in the light of an agreement by

them to give him time to pay, and indemnify them in case they should be compelled to pay as his security, does not look to any agreement existing between the bank and the drawer for a renewal of those notes; but on the contrary, it is plain from the deed, that the parties looked to the probability of payment by the drawer, before the time when the mortgage should be forfeited. As it regards the agreement of the 17th of July, it may be sufficient to remark, that we have heretofore determined, that it might be inferred from it, that the notes were, but for its stipulations, to have gone through the customary forms of demand and notice; and we cannot therefore, deduce from it now, an inference directly the contrary. The notes in controversy were at their maturity, according to the usage of all banks, to be either paid or renewed. The note over due at the date of the agreement, had not been paid, and anxious to avoid a protest, the defendant had only stipulated that the bank should waive its practice in this respect, of either protesting, or of asking a renewal, and ought not to be considered as evidence, that any arrangement had existed between the endorsers and the bank, either at the maturity of the note, or at any anterior period, that the note was to be renewed.

2. The position that a transfer of all the drawer's property to the endorser to indemnify him against loss for his liability, exempts the holder from the necessity of making a demand, might, perhaps, if it were a new question, admit of some discussion, unless shown to be amply sufficient to meet the notes. But then there are respectable authorities which sanction the doctrine. *Bond et al vs. Farnham,* 5 *Mass.* 170. *Morton vs. Lewis,* Conn. Rep. 478. 3 *Kent Com.* 113. *Barton vs. Baker,* 1 *Serg. and Rawl.* 334. And it is important that the law in relation to commercial paper should be uniform in the states of the union. We therefore adopt the judgments of the Supreme court of *Massachusetts, Connecticut,* and *Pennsylvania.* And on this branch of the case, the only question remaining is, whether there was evidence that all the property of the drawer had been assigned to the defendant.

The plaintiff who desires to exempt himself from the necessity of proving a demand, must prove the facts necessary to make his case an exception to the general rule. The *onus* is on him, and is rightfully upon him. Does he offer sufficient evidence of the fact when he shows the deed for the maker's plantation, excepting seventy acres, and all his personal property? Certainly not. The very evidence offered showing unassigned property—and yet, that is the only legitimate evidence offered to prove the fact here, for the deed of the 5th July, 1827, conveying the seventy acres to *Richard* and *Grafton Duvall*, is a mortgage for a then existing debt of $10,000, alleged to be due them from *Lewis Duvall*. And if the terms of the deed are to be regarded, it could not *prima facie* have reference to these claims, for which they were only security, and towards which, they had not paid a dollar. But if it had reference to their endorsements, was not the plaintiff bound to go further, and by showing the extent of *Lewis Duvall's* possessions, give the jury evidence from which they could infer, that he had assigned all as an indemnity for this debt? *Lewis Duvall* may have owned ten times the amount of the property here conveyed, for any thing which appears from the conveyance. We do not think enough had been proven, to throw the defendant upon proof that *Duvall* held other property—nor do we conceive, that by demanding further proof to show that all his property was conveyed, we are calling on the plaintiff for negative proof. The plaintiff is not asked to prove that he had no other property, but to show affirmatively, what property he had, and that all such property as he was known to have, had been conveyed. There is nothing in the deeds that indicate, that all was conveyed: nor can an argument be drawn from the fact, that as he has conveyed all his personal property combined with real, that all his real estate is conveyed, because the very deed by which all his personal property is conveyed makes a reservation of land. But if it had not contained this reservation, it still would not have been legitimate to deduce from it, the

fact that all his lands were thereby assigned. We therefore think there was not sufficient evidence to support this proposition.

3. The third matter relied upon, involves the consideration of the mortgage of 1825. This instrument of indemnity was taken before the particular notes sued on had an existence: but the mortgage by its terms applied to them, for it was taken not only to secure the particular debt then specified, but applied to any additional sum, that might arise, due them as his endorsers, anterior to the period stipulated in the mortgage for the payment of the money by *Lewis Duvall,* so that whether these notes were in fact renewals of accommodation notes existing at the time of the mortgage, or mere debts arising due to the bank subsequent thereto, upon which they, the mortgagees, were endorsers, the mortgage was in either view intended as an indemnity.

In this mortgage there is a covenant on the part of *Lewis Duvall,* to pay the amount for which they may become indebted, on or before the 1st of September, 1829. The effect of this covenant was, in our judgment, not only to prevent the foreclosure of the mortgage, before the time stipulated, but as between the parties to prevent all recovery against *Lewis Duvall,* of the amount of these responsibilities, until the time limited, in case the endorsers or either of them were compelled to pay them. Had the endorsers paid these notes and instituted an action of *assumpsit* against their principal, to recover the amount paid, we think the covenant contained in the mortgage, might have been produced to show the extension of time agreed to be given, and that the suits were prematurely brought. If this be true, the endorsers, in our judgment, were not entitled to notice. They had put it out of their power to sue the drawer. The object of the law in requiring notice is to enable the endorser to have his remedy over against the party responsible to him, and if he could have no recourse, for more than two years after the note fell due, having by his agreement with the drawer disabled himself therefrom, we think the demand and notice required accord-

ing to the general rule of law, as applicable to these instruments, was rendered unnecessary to the responsibility of the endorsers, nor was it necessary, as we think, to observe these rules in this case, to enable the last endorser to have immediate recourse to his first endorser, as they had both taken this mortgage, and granted the drawer indulgence; for we do not think, that the last endorser, in the face of this mortgage, could have had any recourse to the first endorser, until the time limited in the mortgage for the drawer's responsibility.

The aforegoing views dispose of the second, third, and fifth exceptions of the defendant, in each of which, we think the court were in error in granting the plaintiffs' prayers.

We, furthermore, think the court erred in admitting in evidence the deed of the 5th of July, 1827.

In relation to the *fourth* exception, we think the court were right in declaring the evidence therein offered, as inadmissible. We mean to express no opinion, how far such a usage as that attempted to be established, would render a demand and notice necessary, because we do not think the evidence offered was admissible to establish such an usage.

In all the evidence offered, there is but a single instance proven of notice, where the bank knew of the conveyance of all the drawer's property to indemnify the endorser; and a single case of that description ought not to be allowed to go to a jury to establish an usage.

In the former trial of this cause, in this court, there existed no evidence in any of the bills of exception, of *non-demand,* as there does in these exceptions, and we did not, therefore, examine the questions involved in the fifth and sixth bills of exception in the former record, as we supposed our determination in relation to the agreement furnishing evidence of a demand, would dispose of the whole case, when it should a second time have been submitted to a jury, and that the questions really meant to be raised in the fifth and sixth exceptions of that record, would never arise again.

Looking to the fact, that in expressing our former judgment, we expressly waived an examination of the law involved in those exceptions, and did in truth, never examine, or in any manner decide it, on that appeal, we cannot concur in the argument, that such judgment shuts the door to an examination thereof on this appeal. But, although we think the court below erred, we cannot reverse their judgment, because we think the plaintiff was entitled to recover, and therefore must enter their

JUDGMENT AFFIRMED.