(Decided 20th March, 1868.)

---

JOHN D. BRANDT, Surviving Partner of BASIL R. SPALDING, *vs.* ROBERT MICKLE and WILLIAM G. WETHERALL, EX'RS of EDWARD GRIFFITH.

*Right of Commissioners under the Act of* 1828, *chap.* 165, *to take Depositions out of the County for which they are appointed—Promissory Notes — Waiver of Notice—Marital rights of the Husband in the property of the Wife prior to the Act of* 1853, *chap.* 245.

The Act of 1828, ch. 165, did not confer upon a commissioner appointed by the Circuit Court for Harford county, the power to take depositions in the city of Baltimore.

The law is firmly established that the contract of the endorser is such, that notice of a demand and refusal is essential to entitle the holder to recover. The *onus* is upon the plaintiff, who claims exemption from the operation of this general rule.

In this State a transfer of *all* the maker's property to the endorser to indemnify him against loss for his liability, exempts the holder from the necessity of proving or making a demand.

A prayer is erroneous which asserts the proposition, that an assignment of a part only, of the maker's property, dispenses with demand and notice, provided the transfer includes all the property the maker may hold at the time of the maturity of the note.

In order to exclude the marital rights of the husband, in personal property given to the wife, prior to the Act of 1853, ch. 245, a clear intention in the donor that it should be for the separate use of the wife, must appear.

Technical words, it is true, are not necessary to create a separate estate in the wife, but adequate language must be used in making the gift, to manifest a decided intention to transfer a separate interest.

APPEAL from the Circuit Court for Harford County:

This was an action of *assumpsit*, instituted on the 12th of November, 1851, by Basil R. Spalding and John D. Brandt, co-partners, trading as B. W. Spalding & Brandt, against Edward Griffith. After Mr. Spalding's death in 1862, the suit was prosecuted by the appellant as surviving partner. The cause of action was a promissory note held by the plaintiff, dated March 27th, 1851, for $1,200, drawn by John Higinbotham in favor of the defendant, and by him endorsed, payable four months after date, and protested at maturity for non-payment. The case was regularly continued from term to term, until May, 1866, when it was finally brought to trial, resulting in a verdict and judgment for the defendant.

At the trial below, four exceptions were taken to the rulings of the Court—two by the defendant, which were waived in this Court—and two by the plaintiff which are as follow:

*1st Exception:* The signatures of the maker and endorser were admitted. It was also admitted that Perrymansville

was the post office of the defendant. The plaintiff offered in evidence the original notes, and also the protest. The protest stated that on the 30th of July, 1851, (the day on which the note matured) the notary, Joseph B. Williams, presented the note at the place of business of John Higinbotham, the maker, which was found closed, and no person there to pay it. It also stated that on the same day he addressed written notices to the defendant at Perrymansville, (his admitted post office,) "informing him that the note had not been paid, and that he would be held responsible for the payment thereof." The plaintiff, then, for the purpose of proving that the notice as sent contained, in addition to the above quoted words, the further words, "payment therefor having been demanded and refused," offered in evidence the deposition of said Joseph B. Williams, (who was admitted to be dead,) taken on the 13th of July, 1853, *de bene esse,* in the city of Baltimore, before Edwin H. Webster, standing Commissioner of the Circuit Court for Harford county, appointed in pursuance of the act of 1828, ch. 165, upon regular notice given to and accepted by Otho Scott, Esq., the then attorney on the record, of the defendant. The time fixed in the notice thus given, was ten o'clock, A. M. But the return of the commissioner showed that the counsel of the respective parties agreed that the hour should be changed to four o'clock P. M., of the same day.

The return of the commissioner further showed that he attended at the time and place agreed on, and waited there until "twenty-five minutes after four — the counsel for the defendant not appearing, and being informed that Joseph B. Williams, was too ill and feeble to leave. his dwelling, he proceeded with the plaintiff's counsel to the dwelling of said Williams, on Lexington street at the corner of Calvert, where he found said Williams, in a very weak and feeble condition, and apparently too unwell to leave his dwelling, and then and there took his deposition," &c.

The defendant objected to the admissibility of this evidence upon the grounds:

1st. That Mr. Webster, as standing commissioner, had no authority to take a deposition outside of Harford county.

2d. That if he had such authority, the deposition was not admissible, because it was not taken at the place named in the notice.

The Court being of opinion that the first ground of objection was well founded, rejected the deposition. To this ruling the plaintiff excepted.

*2d Exception:* The plaintiff for the purpose then of proving a waiver of notice on the part of the defendant, offered in evidence an assignment from the said John Higinbotham to William G. Wetherall, of the property therein mentioned, *in trust* for the benefit of the holders of the notes drawn by Higinbotham, and endorsed by the defendant, following it up with the testimony of the said Higinbotham, and Wetherall, to show that the assignment was made with the knowledge, at the instance and for the benefit of the defendant; that on the day on which it was executed, (23d July, 1851,) it embraced *all* of Higinbotham's property; and that between that day and the maturity of the note sued on, (30th of July, 1851,) he acquired no other property. From the evidence of Higinbotham, it appeared that on the 23d of July, 1851, there was in his house certain household furniture not embraced in the assignment to Wetherall, and which on the same day by bill of sale, also offered in evidence, was assigned by Higinbotham to Sophia Higinbotham, in trust for his wife Frances, and her children.

The bill of sale was executed after the assignment to Wetherall, and stated that the furniture and effects conveyed by it, were purchased and paid for out of the funds advanced to the said Frances, by her father, Eli Clagett, in his life time for that object, and by and with moneys appertaining to the private and separate estate of the said Frances, since the decease of her said father. And said Higinbotham also stated that the recitals in said bill of sale are true, that he never considered said furniture mentioned in said bill of

sale as his, but his wife's, the same having been bought by her in 1844, with the proceeds of a check for $1,000, advanced to her by her father, the late Mr. Clagett in his life time, and the rest of it with her separate funds acquired by her after her father's death in 1848.

The evidence on both sides being closed, the plaintiff offered the two following prayers:

1st. That if the jury shall believe from the evidence that John Higinbotham made, and the defendant endorsed, the promissory note offered in proof by plaintiff, and falling due on the 30th day of July, 1851, and that said Higinbotham on the 23d day of July, 1851, made the assignment which has been offered in evidence by the plaintiff, and that said assignment was made in the presence and at the instance of the defendant, or the defendant's counsel, with the knowledge of the defendant, and that said assignment conveyed all the property at that time owned by said Higinbotham, and that said Higinbotham acquired no other property between the day of said assignment and the maturity of said note, then the plaintiff is entitled to recover the amount of said note with interest thereon from the day of its maturity, whether the notice of the dishonor of said note was or was not duly given by the holder thereof to said defendant; provided, the jury shall find that when said note fell due, it was duly presented for payment; and provided also, the jury are satisfied that on the day the said note fell due, it belonged to Basil R. Spalding and John D. Brandt, as partners in business, under the firm of B. W. Spalding & Brandt, and continued to belong to them up to the day of the death of said Basil R. Spalding, and since his death has continued to be the property of said John D. Brandt, as survivor of said B. R. Spalding.

2d. That if the jury shall believe from the evidence that John Higinbotham made, and the defendant endorsed, the promissory note offered in evidence by the plaintiff, and falling due on the 30th day of July, 1851, and that said Higin-

botham on the 23d day of July, 1851, made the assignment which has been offered in evidence by the plaintiff, and that the said assignment was made in the presence and at the instance of the defendant, or at the instance of the defendant's counsel, with the knowledge of the defendant, and that at the time of the maturity of said note, the said Higinbotham had no property whatsoever, other than that embraced in said assignment, then the plaintiff is entitled to recover the amount of said note with interest from the day of its maturity, whether notice of the dishonor of said note was or was not duly given by the holder thereof to the said defendant; provided, the jury shall find that when said note fell due it was duly presented for payment; and provided also, the jury are satisfied that on the day when said note fell due the same belonged to Basil R. Spalding and John D. Brandt, as partners in business, under the firm of B. W. Spalding & Brandt, and continued to belong to them up to the day of the death of said Basil R. Spalding, and since his death has continued to be the property of said John D. Brandt, as survivor of said Basil R. Spalding.

And the defendant also offered the six following prayers:

1st. That the plaintiff is not entitled to recover in this action, unless they find from the evidence that payment of the note mentioned in the declaration, was demanded from the maker at its maturity, and was refused, and that notice of such demand and refusal was given or sent to the defendant, or that there was a waiver by the defendant of said notice.

2d. That the protest and certificate of the notary public, offered in evidence by the plaintiff, is not evidence of notice to the defendant that payment of the note sued on in this case, was duly demanded of the maker and refused, so as to make the defendant liable as endorser of said note.

3d. That the testimony taken under the commission issued to Edwin H. Webster, offered in evidence by the plaintiff, is not admissible as evidence in this case.

4th. That there is no sufficient evidence in this case to prove any notice to defendant of such demand on the maker of the note, offered in evidence by the plaintiff, as will bind the defendant as the endorser of said note.

5th. That the paper offered in evidence by the plaintiff, purporting to be an assignment from John Higinbotham to William Wetherall, is not of itself sufficient proof of a waiver by defendant of notice, that payment of the note offered in evidence by plaintiff, was duly demanded of the maker and refused, so as to make the defendant liable as endorser of said note.

6th. That if the jury believe from the evidence in the cause, that the paper purporting to be an assignment from John Higinbotham to Wm. G. Wetherall, was executed before the execution of the paper purporting to be a bill of sale from John Higinbotham to Sophia Higinbotham, and that at the time of the execution and delivery of the paper purporting to be an assignment from John Higinbotham to William G. Wetherall, he, the said Higinbotham, had in his possession certain household furniture not embraced in said assignment, and that the money with which said furniture was purchased, was the proceeds of a check, payable to bearer; given to said Higinbotham's wife by her father in the year 1844, and that said check passed to the possession of said Higinbotham from his wife, and was retained by him for three weeks, and that he drew the money on said check from the bank, and delivered it to his wife, and that therewith she purchased said furniture, that then the said Higinbotham was the lawful owner of said furniture, and because said assignment does not include said furniture, it is insufficient to prove a waiver by defendant of notice, that payment of the note offered in evidence by plaintiff was duly demanded of the maker and refused, so as to make the defendant liable as endorser of said note.

The Court granted the first prayer of the plaintiff and all those of the defendant, and rejected the second prayer of the plaintiff—to the granting of which prayers of the defendant

and the rejection of the plaintiff's second prayer, the plaintiff excepted; and the verdict and judgment being against him, he appealed.

This cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER and ROBINSON, J.

*John P. Poe* and *Peter W. Crain,* for the appellant, contended:

1st. That the ruling of the Court in rejecting the deposition of the notary, Williams, was erroneous. Until the Code was adopted, the standing commissioners of the various Courts appointed under the Act of 1828, ch. 165, were not confined or restricted to the counties in which they were appointed. They could take depositions any where. Such is, we think, the true construction of the Act. But if this be not so, the consent of Mr. Scott, Attorney for the Defendant, as certified in the report of commissioner Webster removes this difficulty. Nor is there any force in the other objection that the deposition was not taken at the place named in the notice. The return shows that the commissioner and attorney for the plaintiff did meet at the designated place, and waited sufficiently long for the appearance of the defendant's attorney, when, for what will unquestionably be admitted to be sufficient cause, they adjourned to a different place. This every commissioner has a clear right to do. Assuming that the testimony would have been admissible if taken at No. 46 Lexington street, at the time named in the notice, the adjournment to another place was within the undoubted province of the commissioner; nor would there be any necessity for further notification. Once notified, the defendant was bound to take notice of a subsequent appointment, made at the time and place fixed in the first notice.

For these reasons, it is insisted that the ruling of the Court on the first exception should be reversed. *Trapnall vs. State Bank,* 18 *Ark.,* 53; *Lyon vs. Ely,* 24 *Conn.,* 507, 511; *Cherry*

*vs. Baker,* 17 *Md. Rep.,* 77; *Quynn vs. Carroll,* 22 *Md. Rep.,* 288, 295; *Williams vs. Banks,* 5 *Md. Rep.,* 198; *Young and Wife vs. Mackall,* 4 *Md. Rep.,* 368; *Calvert vs. Cox,* 1 *Gill,* 95; *Matthews & Zollikoffer, Garns., vs. Dare & McClure,* 20 *Md. Rep.,* 266.

2d. The second exception presents the various questions growing out of the instructions granted and refused by the Court below. The first instruction asked by the plaintiff, and granted by the Court, was intended to present the proposition, that if the assignment in trust to Wetherall, embraced all the property owned by Higinbotham at the time of such assignment, and he acquired no other property between its date and the maturity of the note, then the plaintiff was entitled to recover. It will be observed that the assignment bore date on the 23d day of July, 1851. The note matured on the 30th of the same month.

The second prayer of the plaintiff was intended to present the proposition, that if on the *day of the maturity of the note,* the assignment embraced all the maker's property, the same legal consequence, viz: A waiver of notice on the part of the endorser, would flow from it. In other words, it is the ownership of the maker's property on the day when the endorser's liability is to be fixed by notice, and not on any antecedent day, that is to be considered in determining the question of *waiver vel non.* The object and reason of notice as given by this Court in *Walters & Co. vs. Munroe,* 17 *Md. Rep.,* 157, are to enable the endorser, after notice of nonpayment, to take steps to protect himself. But if he has all the property owned by the maker on the day of the maturity of the note, there is no reason for the notice, and if given to him, he can derive no benefit from it. *Long & Byrne vs. Crawford,* 18 *Md. Rep.,* 220. The true test, it would seem, therefore, is, whether the endorser has all the property of the maker at the time his liability is to be fixed; not at any antecedent time. Consequently the Court erred in rejecting the plaintiff's second prayer.

3d. The defendant's first, second, fourth and fifth prayers are not objected to.

The objections to the defendant's third prayer have already been discussed under the first exception.

The sixth prayer should have been rejected, because, upon the facts offered in evidence, the furniture in the house of Higinbotham did not belong to him, but was a part of the separate estate of the wife. *State, use of Stevenson, vs. Reigart,* 1 *Gill,* 1; *Chew vs. Beall,* 13 *Md. Rep.,* 348; *Carroll vs. Lee,* 3 *G. & J.,* 508; *Macqueen on Husband and Wife,* 66 *Law Lib.,* 86.

*Henry W. Archer, Thomas F. Bowie,* and *William Schley,* for the appellee:

The plaintiff's second prayer affirms that, upon the state of facts set forth as the hypothesis of that prayer, the plaintiff was entitled to recover. Those facts are: 1st. The making and endorsement of the note. 2d. The assignment to Mr. Wetherall, if made with the knowledge and at the instance of the defendant, or of his counsel; and that Higinbotham had no property beyond what was covered by said assignment. 3d. That the note, when due, was presented for payment. Thus, it will be perceived, that *non-payment,* by the maker, is not made an essential fact; the necessity of *notice* is wholly ignored, and to the assignment, *per se,* (if made under the circumstances stated,) is attributed the efficacy of converting the *contingent* liability of the defendant into a *positive* engagement, on the part of the defendant, to pay the note on demand.

In granting the first prayer of the plaintiff, the Court had carried the doctrine of *waiver* to its utmost verge; if not, indeed, beyond it. But this prayer, if granted, could not be supported by any legal principles. The assignment was not for the benefit of the defendant, but for the holders of notes of the assignor, endorsed by the defendant. The proceeds of collections were not to come into the hands of the defendant;

were not to be applied by the defendant; nor was the defendant, in any sense, a *cestui que trust*, under the assignment. He could only be collaterally benefited, if made liable as an endorser. Mr. Wetherall, the assignee, can only validly apply the small proceeds realized by him, by distributing it, *pro rata*, amongst the plaintiffs and other holders of the $40,000, endorsed notes, then outstanding. The hypothesis of this prayer presents a state of case, essentially different from the case of *Duvall vs. The Farmers' Bank*, 9 *G. & J.*, 31. The defendant, notwithstanding the assignment, had the right to insist on notice of demand and non-payment. *Walters & Co. vs. Munroe*, 17 *Md. Rep.*, 154.

The several prayers proposed by the defendant and granted by the Court, are all unexceptionable; and it is not deemed necessary to present formal points in relation to any of them.

ROBINSON, J., delivered the opinion of this Court.

The Act of 1828, ch. 165, conferred upon the County Courts, the appointment of commissioners in each county, to take depositions of witnesses in civil causes. The second section directs that the depositions so taken, shall be returned by the commissioner to the clerk of the Court in which it shall be intended to use them, and if such clerk shall be any other than that by which he was appointed, there shall be annexed to his return, a certificate by the clerk, under the seal of the Court, that he is such commissioner. The obvious design of the law, was to provide an efficient and convenient mode for the taken of depositions. It not only provides for the appointment of commissioners in each county, but empowers them to take depositions in all causes, whether pending in the Courts of their respective counties, or in any other Court in the State. The power to act out of the county for which they are appointed is no where given, nor was it necessary to accomplish the manifest intention of the framers of the law. Having conferred upon them the power to take depositions in their respective counties, in all causes pending

in said counties or elsewhere, every requirement of the law was gratified; and we are not to presume, it was intended to impose upon suitors the unnecessary expense and inconvenience of sending commissioners into other counties, to perform a duty which it is admitted could be discharged by the resident commissioner. It is our opinion, therefore, that the Act of 1828, did not confer upon the commissioner, appointed by the Circuit Court for Harford county, the power to take depositions in the city of Baltimore. It does not appear by the record that the deposition was taken by consent. Notice, it is true, was served upon Mr. Scott, counsel for appellee, that the plaintiff would take the deposition of the notary, in Baltimore, on the 13th of July, at 10 o'clock, A. M., and it also appears that the hour was afterwards changed by consent to 4 o'clock, P. M. But it does not appear that the counsel for defendant agreed that the commissioner should take the depositions in Baltimore, or that he waived objections to the mode and manner in which it was taken. What would have been the effect of a waiver of all objections on the part of the defendant, we deem unnecessary to decide.

The plaintiff's second prayer was properly refused. The law is firmly established, that the contract of the endorser is such, that notice of a demand and refusal is essential, to entitle the holder to recover. The *onus* is upon the plaintiff, who claims exemption from the operation of this general rule. In this State, a transfer of *all* the maker's property to the endorser, to indemnify him against loss for his liability, exempts the holder from the necessity of proving or making a demand. *Duvall vs. Farmers' Bank of Maryland,* 9 *G. & J.,* 31. In delivering the opinion of the Court in that case, Judge ARCHER admitted that if it were a new question, it might admit of some discussion, unless shown to be sufficient to meet the liability of the endorser; but inasmuch as it had been decided in other States, the Court felt and recognized the importance of uniformity of the law in regard to commercial paper. An examination of the authorities referred to in that case, will

show that the general doctrine of waiver, growing out of the transfer of all of the maker's property to the endorser, is based upon the following reasons: First, that having secured all the maker's property, for the express purpose of meeting his endorsements, he must be considered as having waived the condition of his liability, and engage with the maker on receiving all of the property, to take up the note. Secondly, that having thus stripped the maker of all his property, and received all the security he could give, the endorser must know that a demand upon the maker would be fruitless. *Bond vs. Farnham,* 5 *Mass.,* 170; *Barton vs. Baker,* 1 *S. & Rawle,* 334. The plaintiff's prayer asserts the proposition, that an assignment of but part of the maker's property, dispenses with demand and notice, provided, the transfer includes all the property the maker may hold at the time of the maturity of the notes. This too, in the absence of any declarations or acts of the endorser at the time of the transfer, showing that he intended to make himself primarily responsible for the debt. Such a proposition is not sustained so far as we know, by any adjudged case—certainly not in this State. On the contrary, in *Duvall vs. Farmers' Bank of Maryland,* 9 *G. & J.,* 31, it was expressly decided that the deed of the 9th of February, 1825, did not dispense with notice, inasmuch as it did not convey all the maker's property—the seventy acres of land and the personal property being excepted. Nor can it be sustained upon the principles which under-lie all the decisions in regard to assignments to endorsers and constructive waiver. A partial transfer does not necessarily deprive the maker of the ability to meet his notes. Ample means may be left with him to discharge his engagements, and to which the holder may look with confidence for the payment of the note at maturity, nor would it necessarily follow in such a case, that the endorser undertook to make himself primarily responsible for the debt, knowing that his liability is conditional. Prudent considerations may have suggested the propriety of taking some security to meet any legal re-

sponsibility arising from his endorsements. The argument that if he had all the maker's property, notice would be of no avail, applies with equal force in cases of bankruptcy and notorious insolvency, and yet in the latter it was conceded that notice was necessary. Whatever may have been the purpose of the rule, in requiring notice as laid down in the earlier cases, "the requirement of it has settled down into a strict legal right, and appeal to original reasons become less frequent and less influential. 1 *Parsons on Bills and Notes*, 574; 1 *Smith's Leading Cases, Law Lib.*, 3d *Series, top page*, 58.

We also concur with the Court in granting the defendant's sixth prayer. The gift to the wife was previous to the Act of 1853, and in order to exclude the marital rights of the husband in the property, a clear intention in the donor, that it should be for the separate use of the wife, must appear. *Carroll vs. Lee, Adm'r of Lee*, 3 *G. & J.*, 504. The check was the gift of the father to Mrs. Higinbotham, in view of her marriage, but there is no evidence that at the time of the gift, the donor intended it should be for the sole and separate use of the daughter, nor is it so alleged in the bill of sale, the averment being merely that the furniture was purchased with the proceeds of the check, advanced by the father. Technical words, it is true, are not necessary to create a separate estate in the wife, but adequate language must be used in making the gift, to manifest a decided intention to transfer a separate interest. *Carroll vs. Lee, Adm'r of Lee*, 3 *G. & J.*, 504. Words, "for her *use and benefit*," employed in making a gift or transfer of property, are not sufficient to convey a separate estate in the wife. *Turton's Ex'rs vs. Turton*, 6 *Md. Rep.*, 375. The evidence in the record before us, does not certainly present a stronger case. For these reasons the judgment must be affirmed.

*Judgment affirmed.*

(Decided 20th March, 1868.)