## JOHN A. BROWN

*v.*

## FRED. H. LUEHRS.

1. NEW TRIAL—*under what circumstances equity will decree a new trial at law on newly discovered evidence.* On the trial of a suit at law, the plaintiff claimed that he had made a payment of $1000, which overpaid the amount due on a promissory note held by the defendant, which payment was denied by the defendant. The plaintiff testified to the fact of having left the money with his commission merchants, to be paid to the defendant, and that they had informed him that the money was paid over by them. On the trial of the suit, however, the commission merchants, whilst stating that the money was left with them as claimed, could not state that the money was actually paid over to the defendant. The defendant testified that he never received the money, and judgment was rendered in his favor for the balance due on the note, as if the $1000 had never been paid. Plaintiff thereupon brought suit against the commission merchants, who set about investigating the matter by making inquiries amongst the various persons who had been in their employ, and finally found one who testified distinctly to the fact of having paid the money, by the direction of one of the commission merchants, to the defendant in the first suit, and taking his receipt for it, and in his testimony in regard to the receipt, referred to a circumstance which refreshed the memory of the commission merchant by whose order he paid it, so that he distinctly remembered the receipt. The receipt book in which the

receipt was written was destroyed by the great fire in Chicago. Thereupon the plaintiff in the first suit filed a bill in equity for a new trial, based upon this newly discovered evidence, and, on the hearing thereof, it appeared that, previous to the first trial, the commission merchant had induced him to believe that he could prove the payment claimed by them, and he himself testified that one of them expressly told him that he could do so, on the day before the trial: *Held*, that, under these circumstances, there was no lack of diligence attributable to the complainant in not having this newly discovered testimony upon the trial at law, and that a new trial was properly granted according to the prayer of his bill.

2. INJUNCTION—*irregularly granting preliminary, not ground for reversal of order making it perpetual.* Even if a preliminary injunction is improper for want of notice to the defendant, such irregularity is no reason for reversing a decree on final hearing making the injunction perpetual, where the proof justifies a decree for an injunction.

3. EVIDENCE—*stenographer's transcript.* On the hearing of a bill in equity for a new trial in a suit at law, the transcript of the evidence on the trial of such suit at law is properly admitted in evidence where the short-hand reporter who reported the trial testifies that he wrote up the testimony; that the transcript of the testimony is correct; that the witnesses were sworn, and testified as therein stated.

4. DEPOSITIONS—*before whom may be taken.* A commission to take depositions may issue to any disinterested person to take a deposition as commissioner, and such person may be designated by the name of an office which he holds, as well as by his proper name.

5. Where a commission is issued to a person by the designation of an office which he holds, the certificate of the person taking the deposition, that he took it in pursuance of the commission, is evidence of his identity.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Mr. HENRY C. WHITNEY, for the appellant.

Messrs. NISSEN & BARNUM, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed November 12, 1874, to enjoin the collection of, and to vacate a judgment rendered October 23, 1874, on the common law side of the court, on

the ground of newly discovered evidence since the term of court at which the judgment was rendered.

The facts with regard to the common law suit were as follows: Brown held Luehrs' two promissory notes, bearing date Chicago, November 16, 1868, payable there, with ten per cent interest, one for $3000, payable April 1, 1869, the other for $1000, payable January 1, 1869. Upon which notes were indorsed payments as follows: December 4, 1869, one year's interest and $600 principal; January 17, 1871, $1000 for interest to date, remainder on principal; September 12, 1871, $500; October 3, 1871, $500; April 17, 1872, $500; July 12, 1872, $1000.

On January 16, 1874, Luehrs brought the common law suit against Brown, to recover back $557.15, claimed to have been overpaid by mistake on the notes. Brown pleaded the general issue and a set-off, claiming a judgment thereupon for $1000. No question was made on the trial upon the notes or indorsements of payments. The sole controverted question was, whether Luehrs paid Brown a further and additional sum than is indorsed, of $1000 on the notes, which Leuhrs claimed to have so paid November 24, 1870. Judgment was rendered in favor of Brown for $793.44, which is the judgment sought to be enjoined and vacated.

On final hearing, the court below decreed in favor of the complainant, granting the relief prayed for by the bill. Defendant, Brown, appealed.

The circumstances as to the alleged payment of the $1000, were these: Luehrs resided at Monee, 34 miles distant from Chicago. On November 24, 1870, he was in Chicago, and sought for Brown, to pay him $1000 on the notes, but failing to find him, and wishing to leave the city that evening. Luehrs, late in the evening, left the money with Moeller & Busch, a firm of commission merchants in Chicago, who did commission business for Luehrs, to hand over to Brown. On the trial in the suit at law, Luehrs and Moeller & Busch

testified to these facts, but neither one of them could testify
that the money was actually paid over to Brown.

Moeller & Busch testified that the money left their office
the next morning, was sent to Brown, but could not say that
it reached him.

Brown testified that he never received the money.

The judgment against Luehrs having been rendered October
23, 1874, he, on October 26, 1874, commenced a suit against
Moeller & Busch for failure to pay Brown the $1000. They
then set on foot an inquiry among their clerks at the time of
the disputed payment.    They made inquiries of their former
clerks, Peters and Fiebers, but they did not know of the pay-
ment.  They then made search for their former book-keeper,
Cowles, found him at Dubuque, Iowa, and ascertained from
him that he paid the money to Brown.

The testimony of Cowles, taken by deposition, was, that he
was book-keeper for Moeller & Busch from the spring till
fall or winter of 1870; that, one afternoon, in the fall of
1870, after banking hours, Luehrs came into the office and
handed Moeller a package of money, saying, "There is $1000
I want you to pay J. A. Brown on my note; I must hurry for
the train;" that Moeller refused to take it, and Busch took
and counted it, and put it in the safe; that, next morning,
Busch came into the office and directed witness to take the
money and pay it to Brown, and take his receipt; that wit-
ness took the blank receipt book of the firm of Moeller & 
Busch, filled out the receipt ready for signing, and took the
money and receipt book to Brown, gave the money to Brown,
which he counted and signed the receipt for it; that the pay-
ing of the money to Brown is fixed in his memory from the
fact that Moeller took some exception to the manner in which
the receipt was written, claiming that it should have specified
to apply on the note, instead of the usual manner in which
he made receipts to apply on account; that this was an out-
side matter, which did not go on the books of the firm except
the receipt book.

Moeller testified that, when Cowles told him the circumstance of his reprimanding him about the receipt not being in business style, the circumstance came back to his mind "like a flash;" that he now recollects of Cowles bringing the book back with the signature attached to the receipt, and that he looked at the receipt, and recollects the remark he made to Cowles, testified to by the latter, and that he did not recollect this at the former trial of the suit at law. He also testified that the receipt book was burned in the great fire of October, 1871.

We think this newly discovered testimony is of a controlling character, and that, upon another trial, it should produce a different result.

We fully recognize the principle, that a bill for a new trial is watched by equity with extreme jealousy, and that the court must see that injustice has been done not merely through the inattention of the parties; that a party is not entitled to relief after verdict. upon testimony which, with ordinary care and diligence, he might have procured and used upon the trial at law. But we do not think that, under the circumstances, there is any lack of due diligence attributable to Luehrs in not having this newly discovered testimony upon the trial at law. He never knew that Busch gave the money to Cowles to pay to Brown; had never heard of Cowles, or his connection with the matter.

Luehrs says that Moeller told him that Busch paid over the $1000; that, after Busch's return from Germany, Luehrs inquired of Busch about it, and he told him that he had paid the money to Brown.

Busch testified that he had led Luehrs to suppose he would testify he paid the money to Brown, although he does also say that he never told Luehrs absolutely that he paid it, but told him he was under the impression he paid it.

Moeller testifies that, on the morning of the trial of the common law suit, Busch told him that he could swear that

he, Busch, paid the money over himself to Brown, and that witness then told Luehrs what Busch told him.

Moeller & Busch knew to their satisfaction that the money had been paid over to Brown, and, no doubt, gave Luehrs to understand he could prove it by Busch. It was in Busch's hands that Luehrs placed the money to be paid over. We are of opinion that he was justified in relying upon the testimony of Moeller & Busch as being sufficient to prove payment to Brown. There was nothing to point to the necessity of any other testimony, or its existence. In such circumstances may be found a reasonable excuse for not seeking for and procuring on the former trial this newly discovered evidence.

The apparently adverse circumstance of the alleged overpayment by Luehrs of $557, is explained by his testimony that, while he was away, traveling, his book-keeper sent on to Brown a draft for $500 ; that he, Luehrs, afterwards went on making payments. and, on July 12, 1872, he sent by express $1000, and "thought he was almost even," not knowing that he was in fact overpaying $557, because he remained in ignorance of the draft of $500 sent by his book-keeper the October previous.

The memorandum book of Luehrs, in evidence, from the manner in which it was kept, corroborates this statement.

It appears that the notes were kept by Brown in some bank vault, and that, in several instances, the payments were not indorsed by him upon the notes at the time they were made, but sometime afterwards, the notes being inaccessible at the times of payment.

There are some minor points made by appellant which it may be proper to notice.

It is objected that the preliminary injunction should not have been granted without notice to appellant. Admitting this, we do not perceive how advantage is to be taken of it in the way of reversing a decree on final hearing, making the

injunction perpetual, where the proof justifies a decree for an injunction.

It is urged that the stenographer's transcript of the evidence taken at the common law trial, was improperly admitted in evidence. The short-hand writer who reported the trial, testified that he wrote up the testimony; dictated it to two copyists; that the transcript of the testimony of the witnesses was correct; that they were sworn, and testified as therein stated. We think the transcript was properly admitted.

It is insisted that the deposition of Cowles should have been suppressed. The commission was directed to the clerk of the District Court of the 9th judicial district in Dubuque county, of Dubuque, Iowa, and the certificate of the officer taking the deposition shows the officer to have been clerk of the District Court of the State of Iowa, in and for Dubuque county. It is objected that the officer here is neither one of those named by the statute as authorized to take depositions. But the statute provides that depositions may be taken before any disinterested person as commissioner. The person holding this office might take the deposition as commissioner. The person might be designated by the name of the office which he held, as well as by his proper name.

It is objected that the certificate of the officer who took the deposition does not show him to be the same officer to whom the commission was directed. The person taking and returning the deposition certifies that he did it pursuant to the commission. This is evidence of his identity. The objections to the deposition are not sustained.

It is objected that the form of the decree was improper, in awarding a new trial. We believe this to be the usual form of decree in such case.

The decree will be affirmed.

*Decree affirmed.*