W. R. BOWMAN, MRS. H. V. RULE and G. WINNE BOW-MAN, Appellants, v. THE CITY OF WAVERLY and WILLIAM BROCK.

**Municipal corporations:** CONSTRUCTION OF WALKS. Where a city has undertaken to avail itself of the provisions of a statute regulating municipal improvements, and has fixed by general ordinance the method of procedure, it is bound thereby. Thus where an ordinance makes it the duty of a city to bring the bed of a sidewalk to grade it must do so in time to permit the owner to build the walk within the time specified before it has the right to construct the same at the owner's expense.

**Injunction:** DISSOLUTION: MODIFICATION. Where the motion to dissolve an injunction rightfully granted did not seek its modification, an order dissolving the writ was erroneous, although it might properly have been modified.

**Same.** Where an injunction restraining the general and ordinary business of a corporation is issued without notice as required by statute, the remedy for failure to give notice is by motion to set the order aside as having been inadvertently granted, and not to dissolve, although the motion to dissolve if promptly made might be granted.

**Same.** The error of granting an injunction against a municipal corporation without notice may be waived by answering the petition and submitting the cause on its merits.

**Same.** Although a suit may sometimes be dismissed on dissolution of the injunction, a decree of permanent injunction will not be granted on the overruling of a motion to dissolve.

**Municipal corporations:** INJUNCTION: NOTICE: ESTOPPEL. The statute requiring notice of an application for an injunction against a city applies only where the acts sought to be injoined are in the line of its general and ordinary business. So that where by its own showing in support of a motion to dissolve for want of notice it clearly appeared that the acts sought to be injoined were unlawful, they were not within its general and ordinary business, and it was estopped to urge want of notice.

*Appeal from Bremer District Court.—Hon. J. F. Clyde, Judge.*

Saturday, December 17, 1910.

The plaintiffs appeal from an order dissolving a temporary writ of injunction.—*Reversed.*

*Sager & Sweet* for appellants.

*E. A. Schiefelbein, E. A. Dawson,* and *D. A. Long,* for appellees.

Ladd, J.—The plaintiff has owned and resided on lots 1 and 2, in block 38, of Havnon & Le Valley's addition to the city of Waverly, since 1887. The ends of the lots abut on Market street, lot 1 lying along Linn street. In 1882 he planted eight elm trees along the east side of lot 1 between the board walk and the curb line, and these trees are now twenty-five or thirty feet high and ten to fourteen inches in diameter. In 1887 a cement sidewalk replaced the board walk, and in 1894 the city by ordinance established the grade of the streets therein, and among other things ordained that the roadway in Linn street be thirty-four feet wide, seventeen feet on each side from the center to the curb line. In 1889 the entire street was brought down to grade, except that part between the curb line and lot 1 and a like tract across the way. The plaintiff put in curbing, and a driveway from the street was cut down. The portion undisturbed was from twenty-three to thirty inches above the grade, so that he placed two large stones as steps next to the alley at the south to enable pedestrians to reach his cement walk and built a retaining wall along the alley line to the curbing. At the other end there was a plank approach. We understand that the parcel of ground between the curb and

street line across from lot 1 has been reduced to grade, so that the strip in front of plaintiff's premises is all that remains above the established grade. The elm trees had been planted with the approval of the city, and the record bears evidence of plaintiff's persistent insistency upon their preservation. On June 3, 1908, the city council by appropriate resolution ordered the construction of a permanent sidewalk at grade on the east side of lot 1, specifying the kind, and that the cost be taxed against the abutting lot, and provided that "said owner, however, may construct above sidewalk in accordance with the conditions mentioned above, provided such work is done within forty-five days from date of the adoption of this resolution, and under the supervision and subject to the approval of the street commissioner of said city, and in accordance with the resolutions and ordinances of the city council." A copy of the resolution was served on plaintiff June 8th, but at the commencement of this action, September 16, 1908, the street had not been reduced to grade. The petition alleged, however, that the city through its officers and employees expected to "begin cutting down said street, lowering of said sidewalk and the excavation of dirt about the trees," on the following morning, and defendants admitted that in the construction of the permanent walk it would be necessary to excavate in some places thirty inches deep, but alleged this would be done in a prudent manner and asserted its right to remove the earth and construct the walk as provided in the ordinance, and admitted its purpose so to do. Moreover, defendant by an affidavit filed declared that, "if this injunction and restraining order is dismissed by the court, affiant as the engineer of said city and street commissioner thereof will proceed at once or as nearly as may be to bring said surface grade down to the established grade and construct a permanent and substantial walk as hereinbefore described in front of plaintiffs' premises, providing the elements will permit." The answer conceded that the

portion of the street between lot 1 and the curbing was not
at grade as contemplated by section 779 of the Code. That
section in conferring power with respect to permanent
sidewalks in cities provides that "they shall have power to
provide for the construction, reconstruction and repair of
permanent sidewalks upon any street, highway, avenue,
public ground, wharf, landing or market place within the
limits of such city or town; but the construction of per-
manent sidewalks shall not be made until the bed of the
same shall have been graded so that, when completed, such
sidewalks will be at the established grade; and to assess
the cost thereof on the lots or parcels of land in front of
which the same shall be constructed." This was incorpo-
rated in one of the city ordinances so as to read: "It is
provided, however, that the construction of permanent
sidewalks shall not be made until the bed of the same shall
have been graded so that when completed the sidewalk
shall be at the established grade."

An ordinance of the city required permanent side-
walks to be constructed at grade, and, as the street along
lot 1 had not been brought to grade and the time within
1. Municipal cor- which plaintiff might have constructed the
porations: walk had elapsed, the proceedings of the city,
construction
of walks. if upheld, would have the effect of denying
the plaintiff the opportunity of constructing the
walk himself, a privilege expressly conferred on
him, and by the resolution of the council, but
the ordinances of the city proceed on the theory that
only upon the "failure, neglect or refusal of the owner or
owners of the property fronting or abutting on said side-
walk to make said improvements within the time fixed in
the resolution and notice" or "in case privilege is not
extended by said resolution to the property owner to build
said sidewalk the improvement shall be made by the city
at the expense of the owner of the abutting property."
Whether the city might have put in the walk without allow-

ing the owner the privilege of doing so can make no difference. See *Zalesky v. Cedar Rapids*, 118 Iowa, 714. It is enough that this was accorded him under an ordinance conferring authority on the city to build at the lot owner's cost only in event of his failure to do so within the time specified, and, inasmuch as he could not so perform owing to default of the city in not bringing the street to grade, the latter can not insist on constructing the walk.

Though the facts differ from those of *Burget v. Town of Greenfield*, 120 Iowa, 432, the principle is identical. It was there said: "A condition precedent to the construction of a permanent walk was the bringing of the bed of the same to grade (Code, section 779), and this was to be done by the town. The council, however, required plaintiff to construct a permanent walk without providing for bringing the bed of the walk to grade and without doing so in fact. Neither did the town point out the grade line. These things it was required to do, not only by inference from the statute, but by express provision of its general ordinance above referred to. Where a city has undertaken to avail itself of the provisions of the statute, and has fixed in its general ordinance the mode of procedure, it is limited to the mode prescribed in the ordinance. *Zelie v. Webster City*, 94 Iowa, 393. It was therefore impracticable for the plaintiff, at the time when the cement sidewalk in question was first ordered by the council, to comply with the order, and he is not in default in not having done so." *Converse v. Town of Deep River*, 139 Iowa, 740; *Waterbury v. Morphew*, 146 Iowa, 313. We do not say that the bringing of the street to grade is a condition precedent to the adoption of a resolution ordering a permanent sidewalk. What we do hold, and so announced in *Burget's* case, is that this is a condition precedent to the construction of the walk, and, as the city failed to reduce the street to grade within the time plaintiff might have put in the walk, he was not in default in failing to

make the improvement, this having been prevented by the omission of the city to perform a condition precedent to its construction.    To reach any other conclusion would amount to lending our approval to a procedure which in effect would juggle property owners out of the valuable privilege of constructing the sidewalk along their property which they are bound to keep in repair.

Something has been said of a resolution adopted September 1, 1908, which after reciting the intention of the city council to put the street to grade and the omission of a formal order to that effect directed the entire street to be brought to grade and the street commissioner "to complete said work and carry out the order," but the motion to dissolve was submitted on the theory that the city proposed to excavate and bring the street to grade only in connection with and as essential to the proper construction of the sidewalk.    Moreover, a modification of the injunction was not sought in the motion to dissolve; and, as the defendants were rightfully enjoined from proceeding with the construction of the sidewalk, there was error in sustaining the motion to dissolve.    *Hughes v. Eckerson,* 55 Iowa, 641.

2. INJUNCTION: dissolution: modification.

The temporary writ of injunction was issued without notice to the city, and it is contended that this was in violation of section 4359 of the Code, providing that "an injunction to stop the general and ordinary business, . . . of a municipal corporation . . . can only be granted upon reasonable notice of the time and place of the application to the party to be enjoined."    The manifest design of this statute is that such business of a municipality shall not be interrupted without the opportunity of being heard.    Should a writ of injunction, owing to oversight or through inadvertence, be issued in violation of this statute, the court on application will set aside the order therefor and exact the giving of notice as required as a condition precedent to its sub-

3. SAME.

sequent issuance.  The better practice is to move that
the order be set aside, rather than that the writ be dis-
solved.  High on Injunction, section 1615.  But, if the
motion to dissolve is on this ground and presented promptly-
ly, the writ will be dissolved.  *Hughes v. Eckerson*, 55
Iowa, 641.

However, the issuance of an injunction without notice
may, like other irregularities, be waived.  See *Williams v.
Chicago Exhibition Co.*, 188 Ill. 19 (58 N. E. 611); 2
High on Injunctions, sections 1580, 1615.
This is done by putting in issue the allega-
tions of the petition and submitting the cause on the
merits with or without a motion to dissolve.  *State v.
Douglass*, 75 Iowa, 432; *Brown v. Luers*, 79 Ill. 575.

4. SAME.

But final decree might not have been entered in this
case.  Upon dissolution of a temporary writ of injunction,
the dismissal of the action is sometimes permissible, but
it does not follow that decree of permanent
injunction may ever be entered upon the
overruling of a motion to dissolve.  See *Fadely v. Tomlin-
son*, 41 W. Va. 606 (24 S. E. 645).

5. SAME.

· Even though such final decree may not be entered,
the showing may be such as to leave no doubt as to the
propriety of the writ having issued and such was the show-
ing in the case at bar.  The petition was filed
September 16, 1908, and the writ of injunc-
tion issued without notice the same day.  No
objection was interposed until October 17th
following, when defendant filed an answer.  Two days
later defendants moved that the injunction be dissolved
on the grounds (1) that the answer denied without eva-
sion all the substantial facts of the petition; (2) that the
injunction interrupted the excavation of the street and con-
struction of the sidewalk without notice; (3) that, on the
face of the petition, the injunction ought not to have been
granted.  This motion was supported by three affidavits and

6. MUNICIPAL
  CORPORATIONS:
  injunction:
  notice: es-
  toppel.

hearing thereon was set for October 23d, but postponed until October 27th, when plaintiff filed an amendment to the petition in 27 paragraphs and defendant an amendment to the answer in 9 paragraphs. Plaintiff also filed five affidavits in resistance of the motion and defendants two affidavits in rebuttal. Under the pleadings and affidavits, there was no dispute concerning the material facts. The defendants admitted that they were about to commit acts which were conclusively shown by them in the affidavits filed would be unlawful. Having demonstrated by affidavits in support of the motion to dissolve that the temporary writ restrained them from doing unlawful acts, the defendants were not in a situation to claim that these could have been any part of the general and ordinary business of the city. *Hobbs v. Amader & Sacramento Canal Co.,* 66 Cal. 161 (4 Pac. 1147). It is no part of the business of a city to perpetrate an unlawful act, and, though under different circumstances it might be lawful, the moment its character is put beyond the pale of controversy and conceded to be unlawful it ceases to be within the legitimate domain of municipal exertion. The showing demonstrated that notice was not necessary, and the motion to dissolve should have been overruled.—*Reversed.*