HENRY TOMPKINS, Appellant, *vs.* ZACK TOMPKINS, Appellee.

*Opinion filed February 20, 1913.*

1. WITNESSES—*when defendant may testify in suit brought by next friend.* In a suit brought by a next friend to set aside a deed as a cloud upon the title of the nominal complainant upon the ground of undue influence by the defendant and want of mental capacity on the part of the complainant, who had never been adjudged insane nor had a conservator and who testified fully upon the trial, the defendant is not disqualified to testify in his own behalf. (*Holton v. Dunker*, 198 Ill. 407, distinguished.)

2. DEPOSITIONS—*person named to take deposition has authority to administer oath.* Where a commission to take depositions is directed to a person by name he derives his authority from the appointment, which carries with it all the powers necessary to execute the commission, including the power to administer oaths.

3. SAME—*when a deposition taken by foreign notary public is admissible.* A deposition taken by a foreign notary public is admissible in evidence without proof of the foreign law authorizing a notary public to administer oaths, where the commission to take the deposition was directed to him by name and under the description of notary public, and the deposition shows that the deponent was duly sworn by the notary named in the commission.

4. INSTRUCTIONS—*when refusal of instructions stating the rule where a child dominates parent is not error.* In a suit by a next friend to set aside, as a cloud upon the title of the nominal complainant, a deed made by such nominal complainant to his son, upon the ground of undue influence by the son, it is not error to refuse instructions stating the rule of law as to a deed to a child where the child dominates the parent, where the evidence shows that there was no such domination but that the parent made the deed to carry out his own wish and that of his deceased wife, in recognition of the son's kindness to them, and without suggestion by the son that the deed be made.

APPEAL from the Circuit Court of Edgar county; the Hon. M. W. THOMPSON, Judge, presiding.

STEWART W. KINCAID, for appellant.

WALTER V. ARBUCKLE, (H. S. TANNER, and SHEPHERD & TROGDON, of counsel,) for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is a bill in equity filed by Henry Tompkins, who sues by Ellen Drake, his next friend, against Zack Tompkins, a son of the complainant, brought for the purpose of setting aside a deed executed January 8, 1910, as a cloud on the title of complainant, on the ground that at the time the deed was executed the grantor was of unsound mind and that the execution of the deed was procured by the undue influence of the grantee. The defendant answered the bill, denying that the complainant was the owner of the premises, that the complainant was of unsound mind at the time the deed was executed, and that defendant had used any undue influence to induce the execution of said deed. The issues thus made up were submitted to a jury, and the result was a verdict against complainant followed by a decree dismissing the bill, to reverse which this appeal is prosecuted.

Henry Tompkins was for the greater portion of his life a farmer and resided in Edgar county. He owned 360 acres of farm land. His wife had been dead several years and his children were all grown up. Zack Tompkins, the appellee, was the youngest son. In 1893 appellee went to California. Two years later, in 1895, at the request of appellant and his wife, who was then living, and some of the children, appellee returned from California and moved onto his father's farm for the purpose of taking care of his father and mother and managing the farm. Appellant was then above seventy years of age but was still able to do some light farm work. He had his farm fairly well stocked with farm animals and agricultural implements. He also had some cash on hand, stated to be about $800. The evidence shows that appellee and appellant got along very agreeably in the management of the farm. Appellee remained upon the farm with his father, managing the business substantially as his own but with the consent and acquiescence of appellant, until 1908, when appellee again

went to California, and while there contracted to purchase 250 acres of land at $150 per acre. He returned to Edgar county in the fall of 1908 and began making preparations to move with his family to California. Appellant testifies that he had heard a great deal about California as a healthy climate and a desirable place for old people, and he decided that he would go to California with his son Zack. In November, 1908, the personal property was sold off the farm and appellant and appellee, with appellee's family, moved to California. Both parties continued to reside in California until in January, 1910, when the appellant made, executed and delivered the deed in controversy conveying his Edgar county lands to appellee. At the time the deed was executed appellant was living with appellee as a member of his family in California, and had been all the time since he left Illinois. Ellen Drake, who instituted this suit as next friend for appellant, is his daughter. Both appellee and appellant were in California at the time the suit was instituted.

Appellant called a number of witnesses who resided in Edgar county and who had known him prior to his removal to California, who expressed the opinion that the appellant was not of sufficiently sound mind to understand ordinary business transactions and to make a conveyance of real estate and understand the nature and effect of such act. Appellant was a witness before the jury. He was about eighty-nine years of age at the time he testified. The witnesses for appellant had not associated with him nor had any opportunity to observe his mental condition after he left Illinois, in 1908. In the main, their opinions were based on observations and transactions before the appellant went to California, in 1908. On behalf of appellee a large number of witnesses residing in California testified, by their depositions, to the condition of appellant's mind as they had become acquainted with it after his removal to California and up to the time when the deed in question was executed.

We do not regard this case as one requiring a critical examination of the evidence to determine whether the decree is sufficiently supported. We have examined the testimony, and our conclusion is that the verdict of the jury is in accordance with the clear preponderance thereof, and supports the finding that appellant was of sound mind and memory and fully capable of transacting any ordinary business when he executed the deed in question. The testimony given by appellant himself must have had great weight with the jury in satisfying them that he fully comprehended the transaction of executing the deed to his son. His testimony is unusually clear for one of his age. He remembers in detail the circumstances of the execution of the deed and swears that he was getting old; that he did not want to be bothered with the farm; that he had made such provision for his other children as he desired to make, and that he wanted to give this home place to appellee because that was his desire and his deceased wife had requested that such disposition be made of this farm. His evidence presents a peculiar situation. He was called as a witness on his own behalf. His testimony utterly destroys his case. It is very clear from a reading of the evidence that he had nothing to do with the institution of this suit; that he has no sympathy with the complainant's side of it and does not desire the deed canceled, but, as he himself states on the witness stand, it is a case of his other children being dissatisfied with the disposition he has made of his property and seeking to have it annulled for their benefit. Since we are entirely satisfied with the way in which the court and jury below disposed of the questions of fact, it only remains to be determined whether there are any errors of law which require the reversal of the decree.

Appellant's first contention is that the court erred in permitting appellee to testify in his own behalf. It is contended that under the statute a suit brought by a next friend in behalf of one who is unable to care for himself is,

in effect, a suit by a guardian, and that the opposite party is therefore precluded from testifying in his own behalf. In support of this contention appellant relies on the case of *Holton* v. *Dunker,* 198 Ill. 407. In that case the question was whether one William Ryan, an insane person, had forged the signatures of the makers and a certificate of acknowledgment to a deed. The party charged with the forgery was insane and incompetent to testify, and it was held by this court that since insanity rendered Ryan an incompetent witness, other persons who were parties directly interested in the event of the suit were also incompetent to testify. In that case there seems to have been no question about the incompetency of one of the parties by reason of insanity. Here the question to be tried was not the general insanity of Henry Tompkins, but whether he had sufficient mental capacity to execute a deed in January, 1910. He had never been adjudged insane nor had there ever been a conservator appointed for him. Appellant in the case at bar, while questioning the mental capacity of himself to execute the deed, was a witness and testified very fully upon the trial. This fact distinguishes this case from *Holton* v. *Dunker.* The statute does not disqualify interested parties or interested witnesses in suits brought by a next friend. There was no error in the court permitting appellee to testify.

Appellant next contends that the court erred in admitting in evidence the California depositions because there was no proof that the notaries public before whom the depositions were taken had power, under the laws of California, to administer oaths to witnesses. In support of this contention appellant refers to *Keefer* v. *Mason,* 36 Ill. 406, and *Desnoyers Shoe Co.* v. *First Nat. Bank,* 188 id. 312, and other cases, in which it is held that a notary public has no authority to administer an oath unless the same is conferred by statute, and that where an affidavit or other document is sworn to in a foreign State before a

notary public, such document is not receivable in evidence in this State unless accompanied by proof that such notary is authorized by the laws of the State wherein the document was executed to administer oaths. It is argued that unless the notaries were authorized by the laws of California to administer oaths to witnesses the testimony was given without the sanction of a legal oath, and that the depositions for that reason could not properly be received in evidence. The precise question here presented does not appear to have been before this court but the question has been frequently decided elsewhere. The law upon this subject as stated in 13 Cyc., on page 850, is, that where a commission is directed to a person by name to take a deposition he derives his authority from the appointment, which carries with it all the powers necessary to execute the commission, including the power to administer oaths to witnesses, and his official capacity is immaterial. In *Potier* v. *Barclay,* 15 Ala. 439, it was held that a person authorized by a commission to take the testimony of a witness is *pro hac vice* an officer of the court, and as such is invested with authority to swear the witness; and the same doctrine is announced in the following cases: *Ford* v. *Lockwell,* 2 Col. 376; *Harrison* v. *Bowen,* 16 La. 282; *Adams* v. *Graves,* 35 Mass. 355; *Frank* v. *Colhoun,* 59 Pa. St. 381; *McGeorge* v. *Walker,* 31 N. W. Rep. (Mich.) 601. The persons to whom the commissions in the case at bar were issued were in each case specifically named and were described as notaries public. It appears from the depositions that the witnesses were duly sworn by the person named in the commission to take the deposition, and this is all that is required under our statute and under the rule announced in the above authorities to entitle the depositions to be read in evidence. Section 26 of chapter 51 of Hurd's Statutes provides that the person to whom the commission is directed shall swear or affirm the witnesses to testify the truth in relation to the matter in controversy, prior to the taking of the depo-

sition. There is here proof that each of the persons certifying to these depositions was, in fact, a duly authorized notary public, but since they were acting under commissions directing and authorizing them to take said depositions, it was, perhaps, of no consequence whether they were notaries or not. There was no error in allowing the depositions to be read in evidence.

Appellant made a number of specific objections to some questions put to the witnesses who testified by depositions, and exceptions to adverse rulings on these objections have been preserved and are argued in the briefs, but since in our view the competent and unquestioned testimony is sufficient to sustain the decree we do not regard it as necessary to enter into a discussion of the rulings of the court upon the admission or exclusion of testimony.

Appellant makes complaint of the refusal of instructions Nos. 1 and 2. These instructions both purport to lay down the rule that where the position of parent and child is so changed that the child has dominion and control over the parent, under such a situation the burden of proof shifts upon the child to show that any transaction between such parent and child was fairly and understandingly entered into. A sufficient reason for refusing both these instructions is that there is no evidence that the relation between appellant and his son was that of control and dominion by the latter over the former. The evidence shows that the execution of the deed in question was the result of an intention and desire originating with appellant; that it was never suggested to him by appellee that such deed should be made. Upon this point appellee and appellant agree. The execution of the deed appears to have proceeded from a long cherished desire on the part of appellant to give this farm to his son in recognition of his kindness to him and out of respect for the wishes of his deceased wife.

The objections pointed out by appellant to the instructions given on behalf of appellee are not of that serious

character that calls for a reversal of the decree in this case. Under the evidence the decree rendered is the only one that could be sustained.

The decree of the circuit court of Edgar county is affirmed.

*Decree affirmed.*