[No. 24607. Department One. December 12, 1933.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN ZERFASS, *Appellant.*[1]

*Warren Hardy* and *James H. Palmer,* for appellant.

*Robert M. Burgunder, William J. Wilkins,* and *John D. MacGillivray,* for respondent.

MAIN, J.—The defendant was charged by information with the crime of murder in the first degree, and pleaded not guilty. He also pleaded temporary insanity, but alleged that his reason had been restored. The trial resulted in a verdict of guilty as charged,

[1]Reported in 27 P. (2d) 708.

with a finding against the death penalty. Motion for new trial being made and overruled, the defendant appeals from the judgment and sentence.

Upon the appeal, but one question is presented, and the facts will be stated only in so far as it is necessary to present this question.

The appellant was married in the year 1927, and he and his wife continued to live together until the month of June, 1932, at which time they separated. The appellant went to California, where his people resided, and remained for a period of about three months, or until August 31, 1932, when he returned. In the meantime, his wife had obtained employment as an assistant to a sanipractic doctor with whom one Andrew Jackson was also associated or employed.

Upon the appellant's return from California, he met his wife at the place where she was employed, and later she visited with him at his hotel. Sometime during this day, the appellant says that his wife admitted that Jackson had been affectionate to her and had caressed her. Two or three days later, or on September 1, 1932, the appellant, having obtained a gun in the meantime, went to the place where his wife was employed, and the two went into a room, where they conversed together. The appellant says that, during this conversation, he accused his wife of having improper relations with Jackson, and that she admitted that she had been cheating, thereby meaning having sexual intercourse with him. After this, the appellant asked to see Jackson, and he met him in the hall at the foot of the stairs and admits having remembered having fired one shot into Jackson's body. The evidence shows that about two minutes later another shot was fired. Jackson died a few minutes later. The appellant says that he does not remember anything that happened at the time after

firing the first shot. His defense, in substance, was that he was deprived of his reason by reason of the fact that his wife had admitted the illicit relation.

After the appellant had testified in detail as to the interviews with his wife and many other facts, he was asked on cross-examination whether, when he went to California, he had not taken a woman, not his wife, with him as far as Portland, and lived with her there in a hotel for a week as husband and wife, when he went on to California and the woman returned to Seattle. This was objected to on the ground that, since the appellant had not put his character in issue, the state was not permitted to inquire into his illicit relationship with this woman in Portland.

The only question presented upon the appeal is whether it was error for the trial court to permit the cross-examination and require the appellant to answer relative to his relation with the woman who accompanied him to Portland.

The scope of the cross-examination of a witness is a matter which rests largely in the discretion of the trial court, and the ruling of that court thereon will not be disturbed upon appeal in the absence of a showing that the discretion has been abused. *State v. Meyerkamp,* 82 Wash. 607, 144 Pac. 942; *State v. Steik,* 161 Wash. 194, 296 Pac. 546.

The appellant having testified that his reason had been dethroned because of the admission of his wife, if she did make such admission, just prior to the shooting, the question of his own misconduct was not a wholly unrelated matter as bearing upon the question of the effect of his wife's admission upon his mental state. The trial court did not err in permitting the cross-examination complained of.

The appellant particularly relies upon the cases of *State v. Shaw,* 75 Wash. 326, 135 Pac. 20; *State v.*

*Pickel,* 116 Wash. 600, 200 Pac. 316, 204 Pac. 184, and *State v. Zounick,* 133 Wash. 638, 234 Pac. 659, as supporting his position that the cross-examination was improper.

In the *Shaw* case, the defendant had not put his character in issue, and it was held that it was prejudicial error to receive in evidence, as a part of the cross-examination, a certificate of his dishonorable discharge from the United States Navy tending to show that the accused had a bad character. There, the certificate was independent testimony, and was not something which came from the lips of the accused as affecting his credibility, and the holding in that case does not support the contention that the cross-examination in the present case was improper.

In the *Pickel* case, the defendant had not put her character in issue, and witnesses were allowed to testify to the effect that her reputation for morality and chastity in the community in which she resided was bad. This was held to be error, but, like the *Shaw* case, it does not meet the situation here presented.

In the *Zounick* case, the defendant had not put his character in issue, and his direct examination had been wholly unrelated to the question of his character, residence, and like matters. He was required to answer, upon cross-examination, that he was not a citizen of the United States, after ten years' residence here, and that he had claimed exemption from military service because he was an alien. This was held to be error. There, the cross-examination, in effect, impeached the defendant's character, which he had not put in issue, and was upon matters wholly unrelated to his direct examination.

The judgment will be affirmed.

BEALS, C. J., MITCHELL, and STEINERT, JJ., concur.
MILLARD, J., dissents.