[No. 27360. Department One. April 5, 1939.]

JOHN RAWSTHORN, *Appellant*, v. BEATRICE LAURA MARY RAWSTHORN *et al., Respondents.*[1]

*Monheimer & Griffin* and *Thos. Marshall,* for appellant.

*Jones & Bronson* and *W. L. Grill,* for respondents.

[1] Reported in 88 P. (2d) 847.

STEINERT, J.—Plaintiff brought an action in equity seeking (1) the appointment of a trustee to guard the corpus of a testamentary trust fund; (2) the removal from office of an alleged present trustee of the fund because of misappropriations by her, and (3) a full accounting and restoration of all the funds belonging to the trust estate.

The cause was tried to the court without a jury. Findings of fact were made, from which the court concluded that the action should be dismissed. From a decree dismissing the action, plaintiff has appealed.

The parties to this action are closely related by ties of blood. Respondent Beatrice Laura Mary Rawsthorn, who for convenience will hereinafter be referred to as Beatrice Rawsthorn, is the mother of appellant and of respondent Laura Beatrice Rawsthorn, who, likewise for convenience, will hereinafter be referred to as Laura Rawsthorn.

Beatrice Rawsthorn is about eighty years of age. She has lived separate and apart from her husband since 1900. Appellant, John Rawsthorn, the son, is about fifty-two years of age, being a few years older than his sister Laura. All of the litigant parties were formerly residents of England, but since 1912 have resided in this country.

The present controversy grows out of the will of one Esther Eliza Clarke, who was the mother of Beatrice Rawsthorn. Mrs. Clarke, a resident of England, was a legatee to the extent of one-fifth of a residuary estate under the will of her father, William George Harrison. Mrs. Clarke's will, executed in 1891 pursuant to certain trust directions and powers set forth in the will of her father, makes certain provisions contained in the following paragraph:

"AND IN FURTHER EXERCISE AND EXECUTION of the said power and of all other powers if any enabling me

in this behalf I DIRECT AND APPOINT that all the residue of the said one fifth part of the residuary estate of the said Testator [William George Harrison] and of the investments for the time being representing the same and all other (if any) the trust funds and property over which I have or may at any time hereafter have under or by virtue of the said Will or otherwise howsoever any power of appointment or disposition by Will either among my Children or generally shall from and after my decease remain and be and that the Trustees or Trustee for the time being of the said Will shall stand possessed thereof or of so much thereof as shall be vested in them upon the following trusts that is to say As To ONE MOIETY of the same premises Upon Trust to pay the income thereof to my Daughter the said Emmeline Eliza Clarke during her life without power of anticipation And from and after her decease Upon Trust to hold the same upon the same trusts as are hereinafter declared concerning the other moiety AND as to such other moiety of the same premises and the income thereof Upon Trust to pay the income thereof to my Daughter Beatrice Laura Mary the wife of John Rawsthorne during her life without power of anticipation and from and after her decease Upon Trust to stand possessed of the last mentioned moiety and the income thereof In Trust for such persons and purposes and generally in such manner as the said Beatrice Laura Mary Rawsthorne shall by Will appoint and in default of such appointment In Trust for the executors or administrators of the said Beatrice Laura Mary Rawsthorne as part of her personal estate."

We are here particularly concerned with the moiety given to Beatrice Rawsthorn.

The clause "without power of anticipation," as used in the will, operates, under the English law, as a limitation upon the power of a married woman to alienate her life interest in a trust estate created for her benefit. The purpose of such provision is to protect her against the possible influence of her husband

and to prevent control by him over her property. The restraint, however, is effective only during coverture, and when the husband dies the restraint upon the wife ceases to have any further operation. It also appears that the courts, on a proper showing and when the needs of the wife require it, may modify the provision.

Mr. Edmund Francis Blake Church, a solicitor and the nephew of Mrs. Clarke, was named in her will as executor. Mrs. Clarke died in 1898, and Mr. Church administered the estate until his death in 1927, when he was succeeded in office by his wife, who had been made the executrix of his will. Upon the death of Mrs. Church, which appears to have occurred within the last few years, Mr. Gilbert Marshall Prior, a former partner of Mr. Church, became the acting trustee of Mrs. Clarke's estate.

The inheritance of Beatrice Rawsthorn, under her mother's will, amounted to about two thousand pounds English money. Emmeline Eliza Clarke, the other daughter of Esther Eliza Clarke, died in 1912, and her residuary estate, amounting to approximately two thousand pounds, passed to Mrs. Rawsthorn under and by virtue of the terms of Mrs. Clarke's will.

While still in England, Mrs. Rawsthorn from time to time made applications to the Chancery court to have portions of her original inheritance of two thousand pounds paid to her, and the record indicates that by 1912 she had thus received, and had spent, all of that amount. The record also discloses that, by similar proceedings, the two thousand pounds derived through Emmeline Eliza Clarke was likewise paid to Mrs. Rawsthorn, and that a considerable part of that amount has been spent and the remainder has been turned over by Mrs. Rawsthorn to her daughter Laura.

In 1931, an unexpected event occurred. It appears

that one Isabella Caunter, a relative of the Rawsthorns, had died in Scotland in 1896, leaving an estate in which Emma Caunter, her daughter, had a life interest. Upon the death of Emma Caunter in 1931, the estate of Isabella Caunter passed, by the terms of her will, to her next of kin, who, apparently, were the children of Esther Eliza Clarke, then deceased. Emmeline Eliza Clarke, sister of Beatrice Rawsthorn, having passed away before the Caunter estate became available, Mrs. Rawsthorn stood to be the sole legatee thereof through the will of her mother, Esther Eliza Clarke. The Rawsthorns, however, knew nothing about this succession of events, and, in fact, never had any expectation of future acquisition to the Clarke estate. The circumstance of added inheritance came to light solely through the activities of a legal firm in England which made a specialty of tracing unclaimed funds.

In 1933, Mrs. Rawsthorn, who was then in America, received a letter from Mr. Prior, representing the Clarke estate, advising her that a certain party would reveal the name of a person through whose estate the acquisition might be realized, provided that Mrs. Rawsthorn would pay the informant one-third of any amount recovered. To this Mrs. Rawsthorn readily agreed, and as the result of certain proceedings a net acquisition of nearly forty thousand dollars was realized some time in 1936.

There seems to have been some question in Mr. Prior's mind as to whether the Clarke estate or Mrs. Rawsthorn, herself, was entitled to receive the proceeds of the Caunter estate. He appears to have finally decided that the money should be paid direct to Mrs. Rawsthorn, and, accordingly, that was done. However, in order to avoid any legal complications, Mrs. Rawsthorn was, at the time, required to, and

did, execute a release of her power to appoint the ultimate beneficiary of the trust fund created by her mother's will. Of the amount thus realized from the Caunter estate, one-fourth was transmitted to Mrs. Rawsthorn in America and was, by her, turned over to her daughter, Laura, and the remainder was retained and invested in England, but was put in the name of Mrs. Rawsthorn's daughter, Laura Rawsthorn.

It further appears by the record that Mrs. Rawsthorn, in 1920, made a will in which her son, the appellant, was cut off with a bequest of five dollars.

The effect of these various transactions and proceedings, if upheld, in all probability will be to eliminate appellant as a possible heir to any of the funds derived from the Clarke estate. To prevent that result, this action was brought.

One of the assignments of error on appeal presents a procedural matter which should be disposed of first. Appellant contends that certain depositions taken in England should not have been admitted upon the trial, for the reason that no notice of the time and place of taking the depositions was ever given.

It appears from the record that on May 29, 1937, there was served upon appellant's attorney notice of application for a commission to take the depositions of Messrs. Wilfred Mortimer Hunt, a barrister, and Gilbert M. Prior, a solicitor, both residing in London, England. No objection thereto having been made, an order was entered June 3, 1937, directing the issuance of a commission to Walter Frederick Murly, a notary public in London, to take the depositions on oral interrogatories. On June 28, 1937, appellants' attorney wrote to respondents' legal representative in London requesting that the taking of the depositions be held up until appellant could arrange to have a London representative present, "who we will have

contact you as soon as we can conveniently do so."

Nothing further was done until September 24, 1937, when respondents' London representatives cabled respondents' Seattle attorneys that the depositions would be taken the following week. Appellant's Seattle counsel were on the same day advised of the notice, but took no steps to be present or represented at the proceeding. However, the depositions were not taken until October 8, 1937, the delay being occasioned partly by respondents and partly by appellant. On November 2nd, the depositions, having then been completed, were received and filed in the superior court of King county, in this state. The trial took place December 8, 1937.

Appellant contends that the right to be present at the taking of a deposition on oral interrogatories is a statutory right and that there must be strict compliance with the statute. He relies upon Rem. Rev. Stat., §§ 1233, 1239, and 1240 [P. C. §§ 7732, 7727, 7735].

Rem. Rev. Stat., § 1233, provides, among other things, that the notice shall specify the time and place of taking the deposition, and that it

". . . . shall be served such time before the time when the deposition is to be taken as to allow the adverse party, or his attorney, sufficient time by the usual route of travel *to attend,* and three days for preparation, . . ." (Italics ours.)

That section, however, by its terms relates to depositions "taken in this state," and, strictly speaking, does not apply to depositions taken in a foreign country.

Rem. Rev. Stat., § 1239, provides for taking depositions out of the state, but makes no provision for notice of any kind. Rem. Rev. Stat., § 1240, under which the application for the commission was made, says nothing whatever about notice to the opposite party of the time of *taking* the deposition, but pro-

vides only for notice of the time of application for the commission and notice to the witness whose deposition is to be taken. It is, therefore, apparent that none of the sections of the statute relied on by appellant explicitly covers the situation before us.

In ruling upon appellant's objection to the admission of the depositions, the trial court expressed the view that, when a commissioner is appointed to take a deposition, it is his duty to set the time and place, and that it is the duty of respective counsel to ascertain those matters and to be present. Whether that be the rule, and whether it is to be applied in every case regardless of the particular circumstances, we are not now called upon to decide. We will assume, for the purpose of the discussion, that, under the liberal interpretation to be given to our deposition statutes, as expressed in *State ex rel. Rothwell & Co. v. Superior Court,* 111 Wash. 63, 189 Pac. 556, and in the spirit of fair play, parties litigant, or their counsel, are entitled to a reasonable opportunity to be present at the taking of depositions on oral interrogatories before a commissioner in another state or in a foreign country.

But the record in this case amply discloses that appellant had full opportunity to be present, or represented, at the taking of the depositions; and that he either neglected, or else had no desire, to avail himself of it. It is apparent that neither appellant nor his local counsel expected "to attend" the proceeding, and it is equally clear that their request for time to have their London representative "contact" the commissioner was granted. They took no steps to establish such contact. Whatever right appellant may have had in the premises, he waived by his acts and conduct.

A further reason why appellant's objection should not be considered is that it came too late. Ap-

pellant was insisting that the case be tried on the day set, and the trial had proceeded to the point where the depositions were to be read and offered in evidence. Had the objection been made sooner, respondents might have had another commission issue and have given appellant definite notice of the exact time and place at which the deposition would be taken. *Bank of America etc. Ass'n v. Stotsky,* 194 Wash. 246, 77 P. (2d) 990.

Upon the merits of the case, appellant asserts that the will of Esther Eliza Clark discloses upon its face that it was the intention of the testatrix to provide an income for Mrs. Rawsthorn for life without power of anticipation, and that the capital of the estate was to be held in trust until Mrs. Rawsthorn's death for persons and purposes as she should by will appoint, and, in default of appointment, in trust for her executors or administrators as part of her personal estate. Based on this premise, appellant's contention is that the payment to Mrs. Rawsthorn of the corpus of the trust fund, and particularly the delivery to her of the net residue of the subsequent forty thousand dollar acquisition, upon the execution by her of a release of her testamentary powers, were in violation of the trust created by her mother's will; and that, therefore, the trust should be restored and a full accounting of all misappropriations be had.

At the threshold of the case, as thus presented, there arises the question whether appellant has the right to maintain an action respecting the terms of the will of Esther Eliza Clarke, deceased.

Appellant predicates his right to maintain the action upon an alleged oral contract between himself and his mother wherein, he alleges, his mother agreed, during the years from 1907 to 1912, that if he would consent to her withdrawing from the trust fund cer-

tain portions of the capital, the remainder at her death would be divided equally among her heirs at law.

This presented an issue of fact, and much testimony was given thereon. Appellant's testimony at best was vague, indefinite, and unsatisfactory. The testimony of respondents was positive, definite, and emphatic that no such agreement was ever made, and that no statement was ever indulged from which such an inference could be drawn. The court found as a fact that there was no such agreement, and, after reading the record, we are fully convinced that the court's determination of the factual issue was correct.

This leaves the question whether, aside from any agreement, appellant may maintain an action to reestablish the trust. It is conceded and asserted by both parties that in the determination of that question, the law of England is controlling. To that end, the English law was pleaded, and proof thereof by depositions and citation of cases was offered at the trial.

While some of the cases relied upon by counsel, respectively, are difficult of comprehension, owing in part to the fact that each case comprises a succession of opinions, and in part to the fact that they relate to legal conventions peculiar to a foreign jurisdiction, we are, nevertheless, convinced, from the evidence in the record pertaining to the law of England upon the subject with which we are here concerned, that two principles are definitely established as the law of that country.

The first of these principles is that, in a trust created by will for the benefit of a married woman, a provision in the will operating as a restraint on anticipation or alienation is for the sole benefit of the woman, and she alone can rely upon it; that is to say, if for any reason the capital of the trust is diverted, thus depriving her of her income, she is entitled to

have the capital restored so as to produce the income, and should she herself receive the capital, she may restore it and renew the trust. But no person other than the married woman, herself, has any right to insist upon the provision restraining anticipation or alienation in an instrument creating a trust for her.

The other of these settled principles is that no one can have any estate or interest at law or in equity, contingent or otherwise, in the property of a living person to which he hopes to succeed as heir at law or next of kin of such living person. During the life of such person, no one can have more than a mere expectation or hope of succeeding to his property. Under the terms of Mrs. Clarke's will, appellant had nothing more than an expectation, or hope, that by the will of his mother he might be appointed to share in the residuary estate.

Appellant contends, however, that since his mother formally released her power to appoint, his right to inherit from her became fixed by the laws of descent. The contention will not bear analysis, for if the trust be restored, as appellant now insists that it should be, then, to comply with the terms of Mrs. Clarke's will, the power to appoint must likewise be restored, for both are of the same creation; and, since appellant has no legal right to be appointed as a legatee under his mother's will, he has no claim upon the funds of the trust estate.

From whatever angle we view the matter, we conclude that appellant cannot maintain this action.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and JEFFERS, JJ., concur.