[No. 29747.  *En Banc.*  September 23, 1946.]

O. C. MOORE, *Appellant,* v. EUGENE KEESEY, *Respondent.*[1]

[1]Reported in 173 P. (2d) 130.

� ▬ ▬

*O. C. Moore,* for appellant.

*Geo. W. Young,* for respondent.

SIMPSON, J.—Judgment in this case was reversed by Departmental opinion, 24 Wn. (2d) 139, 163 P. (2d) 164. A rehearing was granted, and the cause was argued to the court sitting *En Banc.* The majority of the court has concluded that the Departmental opinion was incorrect.

The complaint contains the following allegations: The plaintiff, an attorney at law, residing and practicing law in the city of Spokane, at the request of defendant, rendered legal services for defendant, "consisting of consultation and advice and preparation of legal papers, including a complaint in and in connection with that certain case entitled E. J. Edwards, Plaintiff, vs. Little Pittsburg Mining Company, a corporation, et al., Defendants"; that defendant was beneficially interested in the lawsuit, which was settled and dismissed with defendant's consent; that plaintiff's services were of the reasonable value of three thousand dollars, of which sum defendant had paid five hundred dollars.

Defendant filed an answer denying the allegations contained in the complaint, except as to the payment to plaintiff of the sum of five hundred dollars. As a further answer and affirmative defense, defendant alleged that, at the time of the litigation mentioned in the complaint, defendant was a member of the board of trustees of the Little Pittsburg Mining Company, a corporation, which had theretofore been dissolved. The defendant, acting for the board of trustees, entered into a contract of employment with plaintiff whereby it was agreed that plaintiff was to prepare a complaint to be filed in court, for which he was to be paid five hundred dollars. Further, it was expressly agreed that defendant was not to become personally liable to pay plaintiff any sums whatever for the services to be rendered in connection with the litigation.

The reply put in issue the allegations contained in the answer.

The cause, tried to the court and jury, resulted in a verdict in favor of the defendant. Motions for a judgment notwithstanding the verdict, or, in the alternate, for a new trial, were presented by the plaintiff and denied by the court.

The plaintiff then appealed to this court.

Assignments of error are: permitting a cross-examination of appellant concerning the meaning, and his interpretation, of certain contracts, pleadings, and letters, and as to the purpose of the action brought by him against the Little Pittsburg Company; permitting the introduction of evidence contained in the depositions of certain witnesses taken by virtue of a superior court order prior to the time of trial; denying plaintiff's motions for judgment n. o. v., or for a new trial; and in entering judgment upon the verdict.

The statement of facts disclosed evidence which may be summarized as follows: Appellant is an attorney at law in the city of Spokane, where he has practiced since 1898. Respondent, a resident of Kellogg, Idaho, has been engaged in the oil business as a representative of the Shell Oil Company. Respondent owned the majority of the stock of a corporation named Little Pittsburg Mining Company, incorporated under the laws of the state of Montana, and was a member of the board of trustees of that company. During 1942, respondent contacted appellant relative to certain transactions connected with the mining company. As a result of the consultations between appellant and respondent, a complaint was filed in the Federal district court of Montana, entitled E. J. Edwards v. Little Pittsburg Mining Company, a corporation, *et al.* The purpose of the action was to recover certain properties and property rights for the corporation in which respondent was interested. August 4, 1943, the controversy involved in the action was settled, and later the action in the Federal court was dismissed.

Relative to the contract of employment, appellant testified that he had explained to respondent that he would have

to be paid five hundred dollars before the case was started, and that he expected further reasonable compensation if the case was won or settled. The record disclosed the following testimony:

"Q. Did you discuss the matter with him [respondent] as to whether or not you were looking for your compensation from these friends, or from him? A. I told him that I didn't know his friends, and I was looking to him, and if he could get them to contribute, I hoped he succeeded in doing so for his own benefit, or words to that effect. But, I didn't know them, I never met anybody else in connection with it."

Respondent paid appellant the sum of five hundred dollars. December 11, 1942, he wrote a letter to appellant which is as follows:

"I have your letter of the 7th, and I expect to be in Superior, Montana, in the next few days, and will then get the necessary dope from the Recorder's Office.

"Mr. Moore, I do not connect up with your letter with reference to the check of $100.00 as on account. I do not want to enter into any agreement where I will *be personally liable* for fees or costs in connection with this Little Pittsburg Mining Company affairs.

"It is. necessary for somebody to start this thing arolling, and with that condition in view, I put up $100.00. It is very important that I have a review of conditions and your opinion, as to whether we have a case against Mr. Harrison or not, and your suggestion as to the proper procedure and probably costs, which I will need to put up to the stockholders in order to arrange the financing of this affair.

"I want to be able to tell the parties interested, just what this action will cost, and our prospect of winning. The sums which you mentioned are not beyond our limits, but we must have something to work on.

"Kindly write me stating your views, etc. and let's get this thing fully understood as to costs and what you expect."

In response, appellant wrote respondent as follows:

"I am just in receipt of your letter of December 14th, and will attempt to clear up, as far as possible, any haziness in respect to fees.

"I stated at the outset that I would expect a retainer of $500.00 to which I understood you were agreeable, and that it would be put up by yourself and friends. I have thought

of the $100.00 advanced by yourself as a sort of earnest payment, as a part of and on account of the $500.00. I have already devoted such time as I could spare to consideration of the facts and record at hand, and as soon as possible on receipt of the balance of the amount stated, or your definite assurance that it will be forthcoming, I will proceed thoroughly to explore both the law and the facts and give you my opinion as to whether anything can be done. I shall probably not be able to do much until after the holidays. Should I conclude that you have a worth-while case, then on assurance of willingness on the part of yourself and friends to advance, from time to time as needed, the expenses which may become necessary or be incurred from time to time, including traveling expenses, (possibly it may become necessary to examine records in the Secretary of State's office at Helena), I will then institute such legal proceedings as may be thought appropriate and prosecute the same to a conclusion in the trial court, without further compensation except in the event of success. Should the result be successful or a settlement be reached, I should expect further reasonable compensation, the amount of which should, it seems to me, depend largely upon the degree of success and the amount of property or money realized, which cannot of course be determined at this time.

"You must realize that I have no personal knowledge of the value of these properties either present or prospective, and I should be glad to have your views as to proper compensation on a contingent basis. Possibly you have given some thought to this question which I have not. I certainly have not intended to create an atmosphere of mystery nor, as above stated, should there be any uncertainty except as to the ultimate outcome.

"Should I go into the case, I should certainly hope to win in the lower court, in which event the appeal if any, would have to be by the other side, and in either event a new chapter with respect to expense and compensation, with a view to the then existing circumstances, would be appropriate.

"I hope the above will clear or help to clear any uncertainty and I appreciate your desire to have a full understanding at the outset.

"I see no reason why the proposed litigation should be unduly expensive. In fact it is my present view that it should be tried largely, if not entirely, on the record, though I do want to go into every phase as far as possible in advance.

"In repetition, if the foregoing is not sufficiently explicit, kindly so advise and I will try again. Also I shall be glad to talk with you further about any phase of the case or my suggested employment to which you may feel that further consideration should be given at this time."

Respondent testified as follows:

"Q. Now, as a result of your negotiations, what, if any, agreement— Strike that. (Q.) What, if anything, was said by Mr. Moore, and what, if anything, was said by you, concerning his compensation for the proposed litigation? A. Mr. Moore made the proposition himself that he would prepare this case for trial for five hundred dollars, and that it would be the proper time for us to get together with a settlement with the Nancy Lee Mining Company. He also suggested that we would stand a much better chance of getting a reasonable settlement after filing a Complaint. Q. Now, what, if anything, did you say to Mr. Moore about your personal liability in connection with his fee or his claimed fee? A. I had told him that I did not care to be personally liable for any of the costs or fees in connection with this case, but I would guarantee him the $500.00 fee which I eventually paid him. Q. Did you in any conversation with Mr. Moore, agree to pay him any fee in excess of $500.00? A. No. Q. State whether or not you did, in any conversation at any time with Mr. Moore, tell him that you would compensate him personally for a sum of money in addition to five hundred dollars for any services rendered in connection with litigation? A. No. Q. You have heard Mr. Moore testify that following the receipt—

"THE COURT: (Interposing) Exhibit 11 is here.

"MR. YOUNG: (Q.) (Continuing)—following the receipt of Exhibit 11 which I have asked you to read (hands paper to witness) you came into his office and said to him in substance and effect that, or that he said to you in substance and effect 'that I don't know about your friends, and I am going to look to you for the payment of my fee in this matter'? A. I have no recollection of any such conversation. Q. Would you say that such conversation did not occur? A. Yes, I would.

"MR. MOORE: Your honor, I—

"MR. YOUNG: (Interposing) (Q.) Now, did Mr. Moore ever indicate to you that it was his intention to hold you individually liable for any fee in excess of five hundred dollars? A. No. Q. At any time? A. At no time."

█ The record as indicated discloses that a question of fact was presented to the jury for its decision, and that the verdict must stand unless error was committed by the court during the trial of the cause.

█ Appellant objects to certain cross-examination which the court permitted counsel for respondent to pursue. The cross-examination consisted of questions concerning the interpretation of contracts, pleadings, and letters which had to do with the litigation in the Federal court of Montana. It is appellant's contention that, by allowing extensive cross-examination, the parol evidence rule relative to written instruments was violated. The extent of cross-examination rests very largely within the discretion of the trial court. *State v. Kwan,* 174 Wash. 528, 25 P. (2d) 104; *State v. Zerfass,* 175 Wash. 420, 27 P. (2d) 708; *State v. Kelly,* 187 Wash. 301, 60 P. (2d) 50; *Shandrow v. Tacoma,* 192 Wash. 329, 73 P. (2d) 733; *Warren v. Hynes,* 4 Wn. (2d) 128, 102 P. (2d) 691; *State v. De Gaston,* 5 Wn. (2d) 73, 104 P. (2d) 756; *Salo v. Nelson,* 22 Wn. (2d) 525, 156 P. (2d) 664.

Careful examination of the record does not disclose facts which indicate in any manner that the trial court abused its discretion in the allowance of the cross-examination.

Appellant based his right to recover, and the amount of such recovery, upon the meaning of the contracts and the results to be obtained from the action in the Federal court, and the intent and meaning of the letters written by respondent and himself. Counsel for respondent had an undoubted right to question the learned appellant concerning all phases of the litigation. It is our conclusion that no error was committed by the trial court in allowing the cross-examination of appellant.

Appellant next predicates error of the trial court in allowing the reading in evidence of the depositions of three witnesses taken without the state of Washington. The witnesses were E. B. Hord, Mae Keesey, and William E. Sears. Hord's testimony was taken at Superior, Montana, Sears' at St. Regis, Montana, and Mae Keesey's at Kellogg, Idaho. The record relative to the taking of the depositions is as follows: March 22, 1945, counsel for respondent made,

served on appellant, and filed his motion for an order directing issuance of a commission to take the deposition of the three above-named witnesses and, on the same day, served appellant with notices that, on Monday, March 26, 1945, counsel for respondent would make application to the presiding judge of the superior court of Spokane county, for a commission to take the testimony on oral interrogatories of the three witnesses, and that the depositions would be taken March 28, 1945. March 26, 1945, the court entered its order as follows:

"This matter came regularly on for hearing on defendant's motion for an order directing a commission to be issued by the Clerk of this Court over his seal to Geo. J. Stewart, a notary public, to take the depositions on oral interrogatories of E. B. Hord at his usual place of abode in Superior, Montana, of William E. Siers [Sears] at his usual place of business in St. Regis, Montana, and Mae Keesey at her usual place of abode in Kellogg, Idaho, and the Court being fully advised in the premises, does

"ORDER, ADJUDGE AND DECREE that the Clerk of this Court issue a commission over his seal to Geo. J. Stewart, a notary public, to take the depositions on oral interrogatories on Wednesday, the 28th day of March, 1945, of E. B. Hord at his usual place of abode in Superior, Montana, of William E. Siers [Sears] at his usual place of business in St. Regis, Montana, and Mae Keesey at her usual place of abode in Kellogg, Idaho, and does further

"ORDER that the depositions so taken may be read in evidence on the part of the defendant on the trial of this case.

"DONE in open Court this 26th day of March, 1945.

"LOUIS F. BUNGE
"Judge"

On the same day, a commission was issued to Geo. J. Stewart of Spokane to take the depositions. The record is silent as to whether appellant was present at the time the court entered its order. Appellant argues that the order to take the depositions was void for the reason that the court was without jurisdiction to appoint a resident of the state of Washington to take depositions outside the limits of the state of Washington. He argues further that the statutes

relative to the taking of depositions must be strictly construed.

Respondent has taken the position as reflected in his brief that the order to take the depositions was valid, and further, that appellant did not make his objection to the reading of the depositions timely.

It is quite true, as contended by appellant, that 18 C. J. 607 states:

"Since statutes authorizing the taking of depositions in actions at law are in derogation of common law, the authority to procure evidence in this manner must be clear, and the provisions of the statute authorizing it must be strictly complied with."

However, counsel neglected to inform the court that the rule is different in the state of Washington, and that here statutes relative to the taking of the depositions are liberally construed.

In *State ex rel. Rothwell & Co. v. Superior Court,* 111 Wash. 63, 189 Pac. 556, this court had before it a petition for writ of prohibition to prevent a superior court from issuing a commission to take depositions in New York. After calling attention to the statutes, we said:

"We are reminded by counsel for relator that the procuring of testimony by the taking of depositions in pure law actions was unknown to the common law. They then argue that statutes providing for the taking of depositions, being in derogation of that rule, are to be strictly construed; and that so construing § 1231, it must be held to mean that depositions can be taken only for the purpose of producing testimony to be read upon the trial of a law action upon its merits. We cannot agree that § 1231 calls for such a strict construction. . . . It hardly needs argument to demonstrate that this statute is purely a remedial one. That of itself suggests a liberal construction, but we have something more than that as our guide in the very act of the legislature wherein is found §§ 1231 and 1232, above quoted from, for in § 144, Rem. Code, we read:

" 'The provisions of this code shall be liberally construed, and shall not be limited by any rule of strict construction.'

"All three of these sections were embodied in the civil procedure act of 1881, found in the code of 1881, being §§ 409,

410, and 758 thereof, which civil procedure act is embodied in §§ 1 to 763, inclusive, of that code. (See, also, Laws of 1891, p. 40). Nothing, it seems, could render more plain our duty to give to these sections a liberal construction."

Again in *Rawsthorn v. Rawsthorn,* 198 Wash. 471, 88 P. (2d) 847, this court stated that the statutes authorizing the taking of depositions should be liberally construed.

"Statutes authorizing the taking of depositions should be liberally construed with a view to effecting their objects and promoting justice, and to the end that a litigant in a pending action may be afforded a reasonable opportunity to procure available testimony in support of his cause." 26 C. J. S. 810, Depositions, § 4.

Accord: *Pollak v. Superior Court,* 197 Cal. 389, 240 Pac. 1006; *Moran v. Superior Court,* 38 Cal. App. (2d) 328, 100 P. (2d) 1096; *Zellerbach v. Superior Court,* 3 Cal. App. (2d) 49, 39 P. (2d) 252; *Etter v. Early Foundry Co.,* 164 Misc. 88, 298 N. Y. Supp. 208; *International Trust Co. v. Kruger,* 139 Misc. 859, 248 N. Y. Supp. 507; *St. John v. Putnam,* 128 Misc. 707, 220 N. Y. Supp. 146; *Muschler v. General Metalsmiths,* 125 Misc. 643, 211 N. Y. Supp. 693.

Rem. Rev. Stat., § 1233 [P.P.C. § 39-13], is limited to the taking of depositions within the state of Washington and has no application to the question presented in this case.

Rem. Rev. Stat., § 1239 [P.P.C. § 39-3], reads as follows:

"Depositions may be taken out of the state by a judge, justice, or chancellor or clerk of any court of record, a justice of the peace, notary public, mayor, or chief magistrate of any city or town, *or any person authorized by a special commission from any court [of record] of this state.*" (Italics ours.)

The pertinent provision of Rem. Rev. Stat., § 1240 [P.P.C. § 39-19], provides:

"Any superior court in this state, or any judge thereof is authorized to grant a commission to take depositions within or without this state. The commission must be issued to a person or persons therein named, by the clerk, under the seal of the court granting the same, and depositions under it may be taken upon written interrogatories or upon oral questions or partly upon oral and partly upon *a* written

interrogatories, in the discretion of the court or judge granting the commission."

█ It will be noted that the statute does not confine the selection of individuals who may take depositions to those residing without the state, but leaves the selection to the discretion of the court which issues the order to take the depositions. To hold that the individual who takes the deposition must be a resident of the state where the deposition is taken, would amount to judicial legislation. The authorities cited do not uphold the contention made by appellant.

The citation from 13 Cyc. 848, reads as follows:

"3. Territorial Jurisdiction. An officer having *general authority* to take depositions has no power to act out of the jurisdiction where, under his appointment or the like, he is alone authorized to exercise his functions." (Italics supplied.)

The above statement is supported by the cases of *Douglass v. Douglass,* 38 N. H. 323; *Silver v. Kansas City, etc. R. Co.,* 21 Mo. App. 5; *Brandt v. Mickle & Wetherall,* 28 Md. 436; *Fonda v. Armour,* 49 How. Pr. (N. Y.) 72; *Jackson v. Leek,* 12 Wend. (54 N. Y.) 105; and *Celluloid Mfg. Co. v. Russell,* 35 Fed. 17.

The opinion in the *Douglass* case was correct under the laws of New Hampshire which provide:

"Any justice or notary public in the state, any commissioner appointed under the laws of the state to take depositions in other states, any judge or justice of the peace or notary public in any other state or country, may take such deposition." Revised Laws of New Hampshire 1942, vol. 2, chapter 393, Depositions, § 2.

The decision in *Silver v. Kansas City, etc. R. Co., supra,* was proper because based upon a special statute of that state. This appears from the following excerpt from that opinion:

"The motion to suppress the depositions was properly sustained. Under our statute a notary public can only transact his official business in the county for which he was appointed and in which he resides. Section 2123, Revised Statutes,

authorizes depositions to be taken without this state by a notary public 'within the government where the witness may be found.' We are informed by defendant's counsel that in Illinois a notary public may execute the duties of his office in any part of the state, so long as his residence is in the county of his appointment. There was no evidence, however, of this at the trial. The statute of Illinois was not introduced. There is no presumption to be entertained as to what her statutes are. In those states formerly subject to the common law of England the presumption here would be that the common law is in force there. But as Illinois was a part of the Louisiana purchase and was never subject to the common law of England, such presumption would not obtain in matters where the common law was applicable. There being no proof of the Illinois statute, and there being no presumption as to what her law is, we hold our own statute as to the powers of the notary applicable. *Crone v. Dawson* (19 Mo. App. 214), and *White v. Chaney* (20 Mo. App. 389). Our statute saying the deposition may be taken by any notary 'within the government where the witness may be found,' I think, means any notary within the government, who is qualified and entitled to act, at the place where the witness may be found. In this state, as before said, he would only be qualified to act in the county of his appointment."

The opinion in the *Brandt* case discloses that it was based upon a statute which limited the court in the appointment of persons to take depositions. The pertinent portion of the opinion states:

"The Act of 1828, ch. 165, conferred upon the County Courts, the appointment of commissioners in each county, to take depositions of witnesses in civil causes. The second section directs that the depositions so taken, shall be returned by the commissioner to the clerk of the Court in which it shall be intended to use them, and if such clerk shall be any other than that by which he was appointed, there shall be annexed to his return, a certificate by the clerk, under the seal of the Court, that he is such commissioner. The obvious design of the law, was to provide an efficient and convenient mode for the taken [taking] of depositions. It not only provides for the appointment of commissioners in each county, but empowers them to take depositions in all causes, whether pending in the Courts of their respective counties, or in any other Court in the State. The power to act out of the county for which they

are appointed is no where given, nor was it necessary to accomplish the manifest intention of the framers of the law. Having conferred upon them the power to take depositions in their respective counties, in all causes pending in said counties or elsewhere, every requirement of the law was gratified; and we are not to presume, it was intended to impose upon suitors the unnecessary expense and inconvenience of sending commissioners into other counties, to perform a duty which it is admitted could be discharged by the resident commissioner. It is our opinion, therefore, that the Act of 1828, did not confer upon the commissioner, appointed by the Circuit Court for Harford county, the power to take depositions in the city of Baltimore."

The *Fonda* case, decided in 1875, related only to the right of a New York superior court judge to exercise his judicial functions outside the city of New York.

The Federal case cited above was controlled by statute of the United States, as is disclosed by the following portion of the opinion:

"This is a motion to strike out certain testimony taken before one of the examiners of this district, sitting at Waterbury, Conn. There is nothing in the statutes or rules, or in any reported case, which authorizes a person designated as 'examiner of the circuit court of the United States for the Southern district of New York' to sit and take testimony outside of his district. The decision cited (*Railroad Co. v. Drew*, 3 Woods, 697) does not apply; in that case the examiner was specially appointed for the district in which he took the proof. The proper mode of taking testimony in equity cases pending in this circuit is indicated in a memorandum filed this day in *Arnold v. Chesebrough, ante,* 16."

It will be observed that Cyc. referred only to the general right of persons appointed by statute or empowered by state authority to take depositions outside the state granting the authority. The stated rule is entirely different from the one under consideration, in which the court by a *special order* provided for the taking of testimony.

26 C. J. S. 822, Depositions, § 17, reads as follows:

"b. Depositions in Other Jurisdictions. Depositions may be taken in foreign countries only before persons authorized

to take depositions, examine witnesses, or administer oaths therein.

"Under some statutes depositions are authorized to be taken in other jurisdictions before persons empowered to take depositions, examine witnesses, or administer oaths therein; such depositions can be taken only by officials of the kind or class designated; but it has been held that, where an officer in another state is empowered by the forum to take depositions, it is immaterial that he is not so empowered by the laws of his own state. In some jurisdictions, an American consul or vice consul residing in a foreign country and duly accredited there is authorized to take depositions in such country."

There is no statement in the above-quoted authority which in any way sustains appellant's contention. It has been the practice in those counties near Idaho and Oregon to have court reporters or stenographers in this state appointed to take depositions in the sister states, and for counsel for both sides in a lawsuit to journey together with the commissioner to take the testimony of witnesses. That procedure has been found to be convenient and expedient. Of course, the matter of convenience does not affect the question of legal right. The question before this court is simply a matter of statutory construction. The selection of persons to take depositions is left by statute to the discretion of the trial court.

The person appointed to take the depositions of the three witnesses in this case secured his authority from the court order, and not from any general statute, and the court, having jurisdiction of the case, had the authority to name anyone in whom it had confidence. Therefore, the court's order is not subject to attack.

"In the case of depositions taken under a commission, the authority of the officer is partly derived from the order directing the testimony to be taken, but chiefly from the commission itself." 16 Am. Jur. 742, Depositions, § 102.

"Commissioners derive their authority from the court, not from the parties. *Guppy v. Brown* (C. C.) 4 Dall. 410, 1 L. ed. 887, Fed. Cas. No. 5,871." 16 Am. Jur. 742, Depositions, note 20.

"A person authorized by a commission to take the testimony of a witness is *pro hac vice* an officer of the court,

as such, is invested with the authority to swear the witness."
*Potier & McCoy v. Barclay,* 15 Ala. 439.

"In the case of *Temby v. Brunt Pottery Co.,* 229 Ill. 540, [82 N. E. 336], the commission was issued to George E. Davidson in Ohio, a notary public. The depositions were returned signed by him as commissioner. The court said: 'He derived his authority from the commission, and it is immaterial that he was also described as a notary public. It is not necessary that a commissioner hold any office, and a commission may be directed to any competent disinterested person. The person to whom a commission to take depositions is issued need only be designated by the office which he holds, and in either case he obtains his authority from the commission. (*Brown v. Luehrs,* 79 Ill. 575.) The addition of the description to the name of the commissioner did not add to or detract from his authority and no certificate was necessary. (*Kendall v. Limberg,* 69 Ill. 355.) The certificate showed that the witnesses were sworn and examined under oath, and the objections were properly overruled.' " *Henry v. Caswell,* 23 Cal. App. 14, 136 Pac. 726.

In *Tompkins v. Tompkins,* 257 Ill. 557, 100 N. E. 965, Ann. Cas. 1914B, 158, an objection was made to introduction of depositions taken in California. The ground for objection was that there was no showing that the notaries public before whom the depositions were taken were in fact licensed as such in California. The Illinois supreme court in that case said:

"It is argued that unless the notaries were authorized by the laws of California to administer oaths to witnesses the testimony was given without the sanction of a legal oath, and that the depositions for that reason could not properly be received in evidence. . . . The law upon this subject as stated in 13 Cyc., on page 850, is, that where a commission is directed to a person by name to take a deposition he derives his authority from the appointment, which carries with it all the powers necessary to execute the commission, including the power to administer oaths to witnesses, and his official capacity is immaterial. . . . [Citing cases.] The persons to whom the commissions in the case at bar were issued were in each case specifically named and were described as notaries public. It appears from the depositions that the witnesses were duly sworn by the person named in the commission . . . this is

all that is required under our statute and under the rule announced in the above authorities."

"Where the commission is directed to a person by name, it is immaterial whether he has any official character or not; he would have sufficient authority to take the deposition from the commission itself." *Adams v. Graves,* 35 Mass. (18 Pick.) 355.

"It is not necessary that it should appear that the commissioner, before whom the depositions were taken, was authorized by law to take depositions. The commission confers the requisite authority." *Smith v. Cokefair,* 8 Pa. Co. Ct. 45.

"The order of court appointing L. W. Good commissioner did not appoint him as a notary public to take the deposition, but appointed him individually as commissioner to do so.

"The objections urged by the appellant against the admission of the deposition in evidence were: 1. That the commission could not be issued to L. W. Good simply as an individual commissioner; 2. That the commissioner had no authority to appoint a stenographer to take the testimony of the witness; 3. That L. W. Good as notary public could not administer the oath to the witness Kyle or certify to the deposition as such notary. These objections were overruled by the court and the deposition admitted in evidence. As to the first objection, it was claimed thereunder that by section 2024 of the Code of Civil Procedure the court could only issue a commission to take the testimony of a witness outside the state to a notary public, judge, or justice of the peace or commissioner of deeds in a sister state appointed as such by the governor of the state, under section 811 of the Political Code. There is no merit in this claim. Section 2024 provides that the commission may be issued to 'a person agreed upon by the parties,' or, if there is no agreement, it may be issued by the court or judge 'to any notary public, judge or justice of the peace or commissioner selected by the court or judge . . . issuing it.' There is nothing in the section requiring it to be issued to a commissioner of deeds. It may be issued to any person whom the court deems a competent and proper person to act." *Alcorn v. Gieseke,* 158 Cal. 396, 111 Pac. 98.

In *Jackson v. Van Loon,* 3 Cai. (N. Y.) 105, 2 Col. & Cai. 460, the New York court had before it a motion for a commission to be directed to a person in New York to take a

deposition in Pennsylvania. The motion was granted on the ground that the act providing for a commission did not specify that the commissioner should live in the state to which the commission was directed.

"A commission to be executed out of the state may be directed to persons residing within it." 26 C. J. S. 826, Depositions, § 20 b.

The designation of Mr. Stewart as a notary public was only descriptive. He derived his authority from the order of the court and not from the fact that he was a notary public.

Some argument has been made that the courts in the state where a deposition was to be taken could not enforce the order and compel the attendance of witnesses if the person appointed to take the deposition was not a resident of the state. That there is no basis for the above argument has been decided by the New York case of *In re Canter*, 40 Misc. 126, 81 N. Y. Supp. 338. In that case the court had before it an application to vacate a subpoena served on the applicant requiring him to appear and be examined in the state of New York before a commissioner named in a commission issuing out of the state of Delaware. The purpose of the issuance of the subpoena was to aid the Delaware commissioner in securing testimony in the state of New York. In passing upon this question the court said:

"It is difficult to conceive how the Legislature could have adopted broader or more comprehensive language than in the first provision commanding attendance 'before the commissioner named in the commission.' The term 'commissioner' has no limited or specific meaning. It is merely the legal designation or characterization of a person having the lawful warrant to do a certain act. It is a general term, not a specific title, involving in its conception as applicable thereto any particular set of legal principles. A person becomes a commissioner simply by being named in the commission. In other words, the legal effect of the language 'commanding him to appear before the commissioner named in the commission' is the same as if it read 'commanding him to appear before any person named in the document or instrument issuing from the foreign court.' We yield to that court in the selection of the person before whom the testimony is to be taken. . . . Even where he is designated

by the title of office, that is merely descriptive, so far as our courts are concerned. . . .

"It may be said in passing that the fact that the procedure here adopted is unusual is no additional reason for declaring it illegal. That the execution of commissions is intrusted as a general rule to residents of the state in which the witnesses are is in the overwhelming majority of cases a matter of convenience. It is simpler, more expeditious, and less expensive for a party in a suit pending in the state of California, for instance, to pray the court to designate somebody in the state of New York, than to send a commissioner from there. And even in contiguous states it means a saving of time and money to secure a local official. But these matters of convenience do not affect the question of legal right."

The authorities to which we have referred effectively hold, first, that the statutes relative to the taking of depositions must be liberally construed, and that, when so construed, it must be held that their meaning is that the court can appoint anyone it so desires, be he a resident of his own state or of a foreign state, to take depositions in a foreign state. Further, that the courts of this country will compel witnesses to appear before the commissioner to give their testimony.

In any event, the trial court was correct in admitting the evidence contained in the depositions for the reason that any objection appellant could have presented was waived.

The case was tried to the court and jury, beginning April 2, 1945. Appellant presented his evidence, and then respondent, on April 4, 1945, started to introduce his evidence by publishing and reading the depositions. Appellant then made his objections. Appellant's objections came too late, as has been decided by this court in *Rawsthorn v. Rawsthorn*, 198 Wash. 471, 88 P. (2d) 847, cited by respondent in his answering brief. In that case, it appeared that the depositions of witnesses had been taken in England, and appellant argued in this court that no notice of the time and place of taking the depositions had been given. In deciding the question, this court stated:

"But the record in this case amply discloses that appellant had full opportunity to be present, or represented, at the taking of the depositions; and that he either neglected, or else had no desire, to avail himself of it. It is apparent that neither appellant nor his local counsel expected 'to attend' the proceeding, and it is equally clear that their request for time to have their London representative 'contact' the commissioner was granted. They took no steps to establish such contact. Whatever right appellant may have had in the premises, he waived by his acts and conduct.

"A further reason why appellant's objection should not be considered is that it came too late. Appellant was insisting that the case be tried on the day set, and the trial had proceeded to the point where the depositions were to be read and offered in evidence. Had the objection been made sooner, respondents might have had another commission issue and have given appellant definite notice of the exact time and place at which the deposition would be taken. *Bank of America etc. Ass'n v. Stotsky,* 194 Wash. 246, 77 P. (2d) 990."

In the *Bank of America etc.* case cited in the one to which we have just referred, error was predicated upon the action of the trial court "in admitting and allowing to be read into the record the depositions taken in Los Angeles." In deciding that no error had been committed, Judge Holcomb, speaking for this court, said:

"The depositions were taken in Los Angeles, and two of the witnesses came from San Pedro to Los Angeles for that express purpose. At the conclusion of the testimony embodied in the depositions, it was indicated that it was inconvenient to have certain witnesses come back from San Pedro to sign them. Therefore, it was stipulated that the depositions might be read over, corrected, and signed by the witnesses before any notary public of Los Angeles county, California, provided the commissioner checked them over and determined that the witnesses were signing the correct instrument. The witnesses did sign before a notary public for the county of Los Angeles, California, W. C. Wren, the commissioner appointed by the superior court of Washington, attaching a certificate to them certifying that they were taken before him. These depositions were, in turn, forwarded to the clerk of the superior court of King county, Washington.

"Appellant contends that the depositions were not properly certified, as required by Rem. Rev. Stat., § 1242 [P. C. § 7737], inasmuch as the certificate does not recite that the depositions were carefully read by the witnesses. He cites the case of *Nasser v. Gaston*, 70 Wash. 685, 127 Pac. 470, in support of his position. In that case, no certificate was attached to the depositions, and they were not returned to the clerk of the court. It also does not appear that the parties entered into any stipulation in the cited case relative to the manner in which the depositions were to be taken.

"Under the facts of this case, there was substantial compliance with the statute in taking the depositions. In *Nasser v. Gaston, supra,* we recognized that, although some courts require strict compliance with the statute for the taking and returning of depositions, this court favors the rule of substantial compliance. *Hobart v. Jones,* 5 Wash. 385, 31 Pac. 879; 18 C. J. 709, § 270.

"Moreover, the motion to quash and to strike this deposition was not made until after the jury was empaneled, and therefore the objections came too late, since they were not made before the trial, even though these depositions were received by the clerk's office on January 5, 1937, and this cause did not come on for trial until February 15, 1937.

" 'On the same principle that objections, when made for the first time at the trial, are too late to permit the correction of errors which might otherwise be remedied, the courts generally refuse to entertain motions to suppress depositions unless such motions are made before the trial.' 4 Jones, Commentaries on Evidence (2d ed.), 3708, § 2002.

"Also, *Inter-Ocean Casualty Co. v. Copeland,* 184 Ark. 648, 43 S. W. (2d) 65; *Deane Steam Pump Co. v. Green & Clark,* 31 Mo. App. 269; *Graham-Brown Shoe Co. v. Snodgrass,* 257 S. W. (Tex. Civ. App.) 632; *Irons v. Bias,* 92 W. Va. 236, 114 S. E. 566; *Newmark Grain Co. v. Elkins Provision & Storage Co.,* 98 W. Va. 650, 127 S. E. 490; 18 C. J. 754-7, § 381; 8 R. C. L. 1161, § 33."

The cause was fairly tried to a jury upon controverted testimony; the court did not commit error in its rulings during the trial, or in passing upon the motions presented subsequent to trial.

The judgment is therefore affirmed.

MILLARD, STEINERT, ROBINSON, MALLERY, and CONNELLY, JJ., concur.

BEALS, C. J., and JEFFERS, J. (dissenting)—We are still of the view that the original opinion in this case, which will be found in 24 Wn. (2d) 139, was correct.

We are therefore unable to agree with the above opinion.

[1] Reported in 173 P. (2d) 164.